FRUGÉ, Judge.
This suit was brought by Aetna Casualty & Surety Company as a result of a fire which destroyed a vehicle on which they had issued a comprehensive general liability insurance policy and which covered the vehicle from loss from fire. Made defendants are: Leo Purvis, d/b/a Purvis Motor Company, and his insurer, American Mutual Hardware Insurance Company, and C. H. Jensen, d/b/a Dixie Truck Refrigeration Service, and his insurer, American Motorist Insurance Company.
Aetna alleged that the fire was caused by the negligence of an employee of Purvis Motor Company or of Dixie Refrigeration or both. The trial judge rendered judgment in favor of the defendants and dismissed Aetna’s claim. We affirm in part and reverse in part.
The insured truck was under a long-term lease to Adams Eggs, Inc. and was being used by their Ferriday, Louisiana, branch called Kings Eggs, Inc. The truck was an International truck and was about a month old at the time of the fire. It had an appraised value of $7,800 which amount was paid to Adams Eggs by Aetna pursuant to their policy.[1]
The primary dispute centers around the installation of an electrical wire which plaintiff alleges ran from the battery of the burned truck to a starter on the motor of a refrigeration unit amounted on the vehicle. The refrigeration unit and wire were installed by Dixie Refrigeration Service. Plaintiff contends that the wire ran from the refrigeration unit down the truck, through a hole in the frame of the truck to the battery where it hooked into the electrical system of the truck. The contention is that the wire was improperly installed causing the rubber insulation on the wire to rub off during operation of the vehicle and eventually causing a short which caused the fire.
Defendants, C. H. Jensen and his insurer, contend that Jensen did not install the wire through a hole in the truck and conceded that this would be improper installation. Jensen contends that the wire ran along the frame of the truck, to which it was attached with nylon clamps, and then to a solenoid located on the starter of the truck.
The trial judge concluded the plaintiff had failed to carry his burden of proving negligence on the part of the defendants and accordingly dismissed the suit. Plaintiffs appeal this judgment.
At the outset we note that the plaintiff makes no contention that Leo Purvis or any employee of Purvis was negligent. We have studied the record and find no basis for finding Purvis liable. Consequently, we affirm the trial court’s judg *847 ment as to Purvis and American Mutual Hardware Insurance Company.
As noted above, plaintiff contends that the fire resulted from improper installation of a refrigeration unit wire on the part of Dixie Refrigeration Service.
The fire occurred on September 29, 1971, on Highway 28 in Catahoula Parish. At the time the truck was being driven by George Spurs, an employee of Kings Eggs, Inc. Spurs[2] was making a delivery of eggs to Pineville, Louisiana, when the truck stopped running. Purvis Motor Company was called and Scott Ensminger, a Purvis employee, went to attempt to start the truck. Ensminger attempted to jump the truck off with jumper cables. When this failed, Ensminger returned to the Purvis Motor Company, secured a new battery; alternator and voltage regulator and returned to the truck and installed them.
As Ensminger and Spurs were again attempting to start the truck, a puff of smoke arose from beneath the body of the truck. Ensminger immediately disconnected the battery cable and looked under the passenger side of the truck where the smoke was coming from. He found a wire going to a refrigeration unit on fire where a wad of tape was wrapped around it as it ran through a hole in the frame of the truck. Ensminger attempted to smother the fire with a rag but was unable to do so.
The fire spread when gasoline from a “saddle tank” located nearby caught fire. The driver Spurs explained that he had just filled the tanks before the truck stopped and that gas was expanding and running out of the vented gas cap due to the heat.
Ensminger testified that the fire started at a point on the wire where it ran through a hole in the frame of the truck under the passenger side of the vehicle. He stated that the wire at that point'was wrapped with electrical tape which when he first saw the fire was melting off and burning. He stated that the wire ran to the positive pole of the truck’s battery and that he did not see any places where the wire was attached to the frame. He specifically testified that the wire was not held in the center of the hole where it would not touch the frame.
Spurs also helped attempt to put out the fire. He testified that the wire had several bad spots on it and that it had been taped several times and that he had put tape on it that morning. He did not remember whether the fire started at a point where the wire was taped. However, like Ensminger, he was sure that the fire had been started by the wire and that the wire ran from the refrigeration unit to the battery.
Max Jones, an independent auto appraiser and expert mechanic, testified that he examined the vehicle at Brown’s Auto Ranch several days after the accident. Brown testified that at that time all of the insulation had been burnt off the wire by the fire but that the wire showed evidence of being worn [3] where it entered the frame and where it went through the frame. He found the wire to be loose and not closely attached to the frame. Like Ensminger, he found that the wire ran through a hole in the frame and stated that when an electrical wire is run through the frame in this fashion it should be encased in some type of housing for protection. He found no such housing. Jones also stated that the cab on this type of truck is subject to a lot of movement which could cause the insulation to be worn through.
The defendant C. H. Jensen testified that he inspected the truck several months *848 after it burned and acknowledged that the wire ran through a hole in the frame of the truck. Jensen also acknowledged that this would be an improper installation due to the danger of the insulation being worn away, causing a short. However, Jensen denied that he had installed the wire in this fashion.
Jensen stated that Dixie Refrigeration had installed the refrigeration unit from another truck onto the International and that he had personally inspected the wire and found it to be in good shape. He further stated that Dixie Refrigeration did not run wires through holes in the frame of a truck, and that the wires were always clamped to the frame of the truck with rubber or nylon straps. He stated that he remembered using nylon straps on this installation. Jensen emphasized that this could not have been his installation because on an International truck the refrigeration wire is run to the solenoid on the starter and not to the battery. The reason for this is to save wire; the shortest route to an electrical source is always used which, in the case of an International, is to the starter (which itself has a wire to the battery) [4]
Emmanuel Robinson, Jr., an employee of Dixie Refrigeration, also testified. Basically, Robinson’s testimony with regard to how the installation was made on this truck was the same as Jensen’s.
With regard to the condition of the truck on the day of the fire, the testimony is conclusive that the refrigeration wire ran from the' unit to the battery and not to the starter solenoid;[5] the wire ran through a hole in the frame in the truck; the wire was not closely attached to the frame of the truck and could rub against the frame in such a manner that the insulation could be lost.
We think that the testimony of Ensmin-ger and Spurs establishes that the fire was caused by a short in the wire where the bare wire made contact with the frame. The only reasonable conclusion is that the insulation was worn away due to vibration of the truck because the improper installation allowed the wire to rub against the frame.
The only remaining question with regard to the negligence of Jensen is whether the improper installation was made by Dixie Refrigeration Service or by someone else.
The fire occurred September 29, 1971. The refrigeration unit was installed August 23, 1971. There was no evidence introduced which showed that the truck had been worked on during this five-week intervening period. If the testimony of Jensen and Robinson is correct that they ran the wire to the starter and not the battery, then during this period a completely new wire some two or three feet longer would have to have been installed on the truck. However, no evidence was introduced showing that this had been done.
The law of Louisiana is that “an inference of faulty workmanship or material arises when construction designed as a permanent installation fails shortly after being put into use.” Joyner v. Aetna Casualty & Surety Company, 259 La. 660, 251 So.2d 166, 168 (1971); Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Saunders v. Walker, 229 La. 426, 86 So.2d 89 (1956); Plunkett v. United Electric Service, 214 La. 145, 36 So.2d 704 (1948). *849 In this case the effect of the inference is to place on Dixie Refrigeration the burden of establishing that the defective installation of the refrigeration wire was not its work but resulted from some other cause.
This burden has not been met as Dixie has introduced no evidence other than the testimony of Jensen and Robinson that the improper installation was made by someone else. There was no evidence that the truck had been sent for repairs. Indeed, Bill King, an employee of Kings Eggs, testified that they had had no previous trouble with the truck.
We find that the trial court erred in finding that Aetna had failed to carry its burden of showing negligence on the part of Dixie Refrigeration Service.
The only remaining question is whether any negligence on the part of Kings Eggs, Inc. contributed to the damage so that’ recovery should be barred. Although the defendants Jensen and American Motorist Insurance Company pleaded contributory negligence in answer, they do not argue that Kings Eggs, Inc. was con-tributorily negligent on appeal.[6]
Defendants bear the burden of proving contributory negligence and we find that they have failed to carry this burden. George Spurs testified in deposition that he taped the wire on the morning of the fire and that the wire had been taped in four or so other places. Except for the tape placed on the wire by Spurs, there is no proof of who put the other tape on the wire. Further, there is no proof that Spurs had taped the wire at the point where the fire occurred.
We think the defendants have failed to carry their burden of proving contributory negligence on the part of Kings Eggs, Inc.
We note that no evidence was introduced at trial which showed that the defendant American Motorist Insurance Company had actually issued a policy of liability insurance to C. H. Jensen. In paragraph 8 of the petition plaintiff alleged that such a policy did exist. This allegation was not answered either in the original answer of American Motorist Insurance Company or any of its supplemental answers. Code of Civil Procedure article 1004 states that all allegations of the petition except those relative to amount of damages “are admitted if not denied in the answer.”[7] Therefore, since we find the insured C. H. Jensen to be liable, a judgment against American Motorist Insurance is proper in this case.
For the reasons assigned, the portion of the judgment of the trial court dismissing plaintiff’s claim against Leo Purvis, d/b/a Purvis Motor Company, and his insurer, American Hardware Mutual Insurance Company, is affirmed. The judgment dismissing plaintiff’s claim against C. H. Jensen, d/b/a Dixie Refrigeration Service, and his insurer, American Motorist Insurance Company, is reversed. It is hereby ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Aet-na Casualty & Surety Company, against C. H. Jensen, d/b/a Dixie Refrigeration Company and American Motorist Insurance Company, in solido, in the amount of $7,800, together with legal interest thereon from the date of judicial demand until paid. All costs are assessed to the defendants cast in the judgment.
Affirmed in part, reversed in part, and rendered.

. Defendants do not contest the valuation of the truck, nor Aetna’s right to bring this suit in subrogation.

. Spurs did not testify at trial since he was out of state at the time. However, his deposition was introduced and is part of the record of this case.

. Jones explained that the wire was composed of many small strands of copper wire wrapped around one another and that some of the strands were broken off.

. In this case the refrigeration unit and wire were removed from a 6MG truck and installed on the International. The testimony indicates that on the GMG the refrigeration unit wire was hooked directly to the battery. Thus, although on International trucks the wire was usually run to the starter to save wire, in this case, apparently no savings of wire was involved as it already was of sufficient length to extend to the battery.

. Jensen admitted that when he viewed the wire after the fire everything he saw “had been some-how or another rerouted.”

. Nevertheless, this court “shall” render a judgment which is “just, legal, and proper upon the record on appeal.” C.C.P. art. 2164.

. There is no contention at any point in the proceedings that American Motorist Insurance Company is not in fact Dixie’s insurer.