486 So.2d 352 (1986)
PRUDENTIAL PROPERTY CASUALTY INSURANCE CO., et al., Plaintiffs-Appellants,
v.
Troy STUCKEY, et al., Defendants-Appellees.
No. 85-338.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1986.
Victor H. Sooter, Alexandria, for plaintiffs-appellants.
Provosty, Sadler & Delaunay, F. Rae Swent, Broussard, Bolton & Halcomb, Drowan G. Vizzier, Alexandria, for defendants-appellees.
*353 Crowell, Owens & Tudor, Richard B. Crowell, Alexandria, for plaintiff-appellee.
Before KNOLL and KING, JJ., and BRUNSON, J. Pro Tem.[*]
KING, Judge.
The issues presented by this appeal are whether or not the trial court erred in finding that an insurance policy did not provide coverage for the plaintiffs' claim and in not awarding plaintiffs damages in tort and redhibition.
Willis C. Jackson, individually, and as administrator for the estate of his minor child, Robert Jackson, his wife, Beverly Jackson, and his major son, James Jackson (all hereinafter referred to as plaintiffs), and the property insurer, Prudential Property and Casualty Insurance Company (hereinafter referred to as Prudential), filed suit for damages caused by a fire against Troy M. Stuckey (hereinafter referred to as Stuckey), and Stuckey's liability insurer, Insurance Company of North America (hereinafter referred to as INA), under the INA policy of insurance issued to Stuckey (hereinafter referred to as the policy). Prudential and plaintiffs alleged that they incurred damages as a result of a fire that partially destroyed the Jackson home. The plaintiffs also sought from Stuckey a reduction in the purchase price of the fire damaged home, by the amount of damages incurred, because of redhibitory defects in the home. From a trial court judgment in favor of INA, plaintiffs appeal. We affirm.

FACTS
In the early part of 1978, Troy M. Stuckey, a general contractor, completed construction of a house in Pineville, Louisiana. Stuckey subsequently sold the house to plaintiffs on March 6, 1978. On January 13, 1982, the plaintiffs were awakened somewhere between 2:00 a.m. and 2:30 a.m. by the smell of smoke which was from a fire that had begun in their home. Despite freezing temperatures and inadequate dress, the plaintiffs made an effort to save their home and belongings until the Holiday Volunteer Fire Department arrived at the scene. Due to the partial destruction of their home, plaintiffs were forced to vacate their home for repairs for approximately two months. At the time of the fire, Prudential had issued a homeowner's policy of insurance to plaintiff, Willis C. Jackson. Under the terms of this policy, Prudential paid plaintiff, Willis C. Jackson, the sum of $33,569.11 for fire damages to the dwelling and became legally and conventionally subrogated for this amount.
On December 7, 1982 Prudential and plaintiffs filed suit against Stuckey, and his insurer, INA; Prudential seeking reimbursement for its subrogation claim for the amount it paid to Willis C. Jackson, and the plaintiffs seeking damages for emotional and physical injury, loss of personal property and sentimental objects, and lost wages, all of which they claimed were incurred due to the fire that was allegedly started due to a defect in their home's brick fireplace. Plaintiffs also asserted a claim against Stuckey for reduction in the purchase price for the sale of the house to them on the ground that the house contained redhibitory defects. Stuckey filed a third party demand against Frank Warren, Jr., the masonry sub-contractor who was responsible for the design, construction, and installation of the fireplace and chimney in plaintiffs' home. Plaintiffs and Prudential thereafter filed a supplemental petition adding Frank Warren, Jr. as an additional defendant in their suit. INA denied coverage under the policy for Stuckey. Stuckey filed a third party demand against INA, seeking indemnity from INA for any sums that he might be held liable to plaintiffs and Prudential, and for attorney's fees and other costs incurred in defending himself.
On March 21, 1984, a Motion for Summary Judgment was filed by INA, on the basis that the policy issued to Stuckey provided no coverage for the losses sustained *354 by plaintiffs, and this motion was denied by the trial court. Prior to trial, Prudential, plaintiffs, and Stuckey jointly obtained a Partial Judgment of Dismissal, dismissing all of the claims of Prudential and plaintiffs against Stuckey, as they had been compromised and settled, and reserving Prudential's and plaintiffs' claims against INA. This left for trial the claims of Prudential, plaintiffs, and Stuckey, against INA.[1]
A bench trial was held and evidence was presented showing that the fire which partially destroyed plaintiffs' home was caused by the negligent design, construction, and installation of the fireplace. In fact, Stuckey testified that fires started in six homes that he built; all six homes having identical fireplaces, and that Frank Warren, Jr. was the masonry contractor on all six of these homes.
Over the objection of Prudential and plaintiffs, the trial judge allowed INA to introduce the policy which it had issued to Stuckey into evidence. After taking the case under advisement the trial judge rendered judgment, which was signed on February 13, 1985, (1) in favor of INA, dismissing Prudential's and plaintiffs' demands at their cost; (2) in favor of Stuckey and against INA for INA's failure to defend Stuckey, in the amount of $1,770.00, together with legal interest thereon from date of judicial demand, as well as all costs associated with Stuckey's third party demand against INA; and (3) taxing all costs on the main demand against Prudential and plaintiffs. INA did not appeal the judgment rendered in Stuckey's favor and against it or answer the appeal. Therefore, this portion of the judgment is now final as to INA. Prudential and plaintiffs appeal from the judgment asserting the following specifications of error:
(1) The trial court erred in failing to address the redhibition issue presented in the pleadings, and at the time of trial;
(2) The trial court erred in admitting into evidence the policy issued by INA to Stuckey;
(3) The trial court erred in improperly relying upon the exclusions of the policy as affirmative defenses, since the policy was not offered to substantiate such defenses;
(4) The trial court erred in finding that the policy did not provide coverage for the damages that Prudential and plaintiffs sustained; and
(5) The trial court erred in not awarding damages in tort and redhibition in favor of plaintiffs and against INA.
Prudential and plaintiffs timely suspensively appealed the judgment but posted no suspensive appeal bond. For this reason the appeal will be treated as a devolutive appeal. Prior to the matter being argued in the Court of Appeal, Prudential dismissed its appeal, with prejudice, reserving all claims of plaintiffs-appellants on this appeal as to the defendant-appellee, INA.

REDHIBITION
Prior to trial the plaintiffs settled all of their claims against Stuckey individually. This included all of plaintiffs' claims for reduction of the purchase price, by the amount of damages they had sustained, because of redhibitory defects in the house, and all claims for damages in tort. Prudential also settled its subrogation claim against Stuckey individually prior to trial. Both Prudential and plaintiffs reserved their rights to proceed against INA, as Stuckey's insurer, at the trial on the merits. Stuckey also reserved his rights to proceed against INA on his claim.
Since Prudential's and plaintiffs' claims against Stuckey, individually, were settled, reserving all of their rights against INA, Prudential and plaintiffs only had a claim against INA, as Stuckey's insurer, if there was coverage for the claims asserted against Stuckey under the terms of the INA policy issued to Stuckey. We will *355 pretermit discussion of this assignment of error for the reasons hereinafter set forth.

ADMISSION OF POLICY INTO EVIDENCE
In their second specification of error, plaintiffs contend that the trial court erred in admitting into evidence the policy issued by INA to Stuckey. Plaintiffs argue that INA, by failing to affirmatively deny in its Answer that it had issued a policy of insurance to Stuckey which was not outstanding at the time of the fire, judicially admitted coverage for plaintiffs' claim, and should have therefore been prohibited from introducing the policy into evidence to controvert this alleged judicial admission. INA asserts that its responsive pleadings were sufficient to constitute a denial of plaintiffs' allegation that the policy it had issued to Stuckey covered the losses incurred by plaintiffs.
The trial court allowed INA to introduce the policy into evidence. In his written Reasons for Judgment, the trial judge stated that "... the admission of a policy by the defendants is not tantamount to an admission of loss or coverage." We agree.
Paragraph 13 of plaintiffs' petition states the following:
"That at all pertinent times herein, petitioners aver that Insurance Company of North America had issued and outstanding a policy of liability insurance to Troy Stuckey (and his agents, representatives and servants), providing coverage for the acts of negligence and/or legal fault delineated above."
INA responded, in its Answer to Paragraph 13, by stating the following:
"Except that which may hereinafter be admitted, modified or explained, the allegations contained in Paragraph 13 of plaintiff's petition are denied.
Further answering the allegations contained in Paragraph 13, INSURANCE COMPANY OF NORTH AMERICA shows that it issued a policy of general liability insurance to TROY N. STUCKEY; however, defendant shows that the policy contains many conditions, provisions, exclusions and limitations all of which defendant intends to and does plead the benefit of; Defendant, INSURANCE COMPANY OF NORTH AMERICA, shows the policy itself is the best evidence of its contents."
INA amended its Answer at the time of trial by adding the following to Paragraph 13:
"However, INSURANCE COMPANY OF NORTH AMERICA shows there was no policy in existence issued to TROY STUCKEY on January 13, 1982."
Denials are governed by LSA-C.C.P. Art. 1004 which states in relevant part:
"The answer shall admit or deny the allegations of fact contained in each paragraph of the petition, and all such allegations, other than those as to the amount of damages, are admitted if not denied in the answer.... Denials shall fairly meet the substance of the allegations denied."
Judicial confessions are governed by LSA-C.C. Art. 1853,[2] which provides:
"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact."
An admission in a pleading falls within the scope of a judicial confession and is a party's explicit admission of an adverse factual element; it has the effect of waiving evidence as to the subject of the admission. Dairyland Ins. Co. v. Trail, 459 So.2d 1368 (La.App. 3rd Cir.1984). A judicial confession must be explicit and not merely implied. First Homestead Fed. Sav. & Loan v. Coleman, 446 So.2d 551 (La.App. 3rd Cir.1984).
*356 In the present case, INA specifically denied the relevant allegations of plaintiffs' petition by stating: "Except that which may hereinafter be admitted, modified or explained, the allegations contained in Paragraph 13 of plaintiffs' petition are denied." The fact that INA further answered that it issued a policy of general liability insurance to Stuckey does not constitute a judicial confession of the existence of a policy outstanding "at all pertinent times," as alleged by plaintiffs in Paragraph 13 of their petition. The Answer of INA further contended that the policy issued to Stuckey contained many conditions, provisions, exclusions, and limitations on which INA intended to rely which would certainly include the policy term. Aetna Casualty & Surety Company v. Purvis, 316 So.2d 845 (La.App. 3rd Cir.1975), upon which plaintiffs rely, is inapposite since the allegation of coverage in the petition filed in that case was never denied in the defendant's answers. For this reason we find that the trial court did not err in admitting into evidence the policy of insurance issued by INA to Stuckey.

COVERAGE AND POLICY EXCLUSIONS
In their third and fourth specifications of error plaintiffs contend that the trial court erred in finding that the policy did not provide coverage for the damages that plaintiffs sustained and in relying upon exclusions of the policy as affirmative defenses. Plaintiffs further argue that, although Stuckey did not renew the policy beyond September, 1980, and although the fire occurred in January, 1982, the policy nevertheless provided coverage for their claims because the negligent construction of the fireplace occurred during the policy period. Plaintiffs further argue that INA only introduced its policy, which was issued to Stuckey, into evidence for the purpose of showing that the policy was not in effect at the time of the fire which partially destroyed the home and for this reason the trial court erred in relying upon exclusions L, M, and O of the policy as affirmative defenses. In light of the fact that we have found the policy was properly admitted into evidence such argument has no merit. If plaintiffs rely on the policy issued by INA to Stuckey for coverage such policy is subject to all of its terms, including any applicable exclusions. In finding that the policy did not provide coverage for plaintiffs' claim, the trial judge specifically noted that the damage sustained by plaintiffs did not occur during the policy period.
The trial judge in his written reasons for judgment stated that:
"Even if the mere existence of a policy serves as the basis for a prima facie case, which it does not, the defendant has shown that, without question, no coverage is afforded under the policy. The policy at issue is a premises-operations liability policy and not a completed operations policy. The plaintiff, therefore, can only carry two-thirds of its burden. It can prove loss and policy existence, but it cannot show coverage under that policy. The policy is necessary in order for the plaintiff to make its prima facie showing. Without it, the plaintiff cannot show coverage in the absence of a judicial admission by the defendant, which the defendant has certainly not provided in this instance.
The defendant placed the plaintiff on due notice that it would rely on policy provisions and exclusions and denied coverage. Thus, whether by plaintiff or by defendant, the policy is necessary evidence in this matter.
As to the policy itself, it clearly and unambiguously excludes coverage for `completed operations'. Exclusions L, N, and O provide, in no uncertain terms, that property damage to premises alienated by the insured, produced by the insured, or to work performed by the insured is not covered. Moreover, property damage is defined in the contract as damage which occurs during the policy period.
The simple, inescapable truth in this matter is that the policy would not have covered this loss even if it had occurred during the policy period. It is a `premises-operations' *357 policy and not a `completed operations hazard' one. Even if it were, it specifically defines property damage as loss from an occurrence during the policy period. The two types of coverage were distinguished in Glass v. Flowers, [244 La.212] 151 So.2d 69 [690]. Further, the exclusion of `completed operations' is valid contractual law, see Roberts v. P & J Boat Service, 357 F.Supp. 729 [D.C.La.1973]; Nash v. Western Cas. Inc. Co. [sic], 406 So.2d 176 [La.1981]; State Farm Ins. v. Avant, 404 So.2d 1311 [La.App. 2 Cir. 1981]; and a case very closely on point with the one at bar, INA v. Bosworth Const. Co., 469 F.2d 1266 [5th Cir.1972].

Try though it might, this Court can find no merit to plaintiff's arguments on the issue of coverage. The Deductible Liability Insurance page, relied on by the plaintiff, merely establishes the method of computing the deductible in case of a covered occurrence. It does not provide a separate or definitive basis for liability." (Emphasis added.)
We do not agree with the trial judge's interpretation of the types of coverage afforded under the policy. The policy issued by INA to Stuckey provided for premises-operations coverage and by endorsement added coverage for independent contractors, except in instances of railroad construction or operations on board ships, completed operations coverage for general contracting and the building and construction of one or two family dwellings, excluding any pre-fabricated construction, and products liability coverage.
The policy term covered the period from September 20, 1977 through September 20, 1980. The record reflects that Stuckey purchased no other policy of insurance from INA after September 20, 1980. INA asserts that at the time the damages were sustained by plaintiffs the policy period had lapsed, and, no coverage was provided. Plaintiffs argue that the policy was in existence at the time when the acts upon which liability were founded, that is, construction of the defective fireplace, were allegedly committed and that the policy affords coverage for the claims sued on.
The basis for plaintiffs' claim is that they contend the policy issued by INA to Stuckey was an "occurrence" policy in which coverage was effective if the negligent act or omission occurred within the policy period, regardless of the date of discovery. An "occurrence" policy is one in which the coverage is effective if the negligent or omitted act occurs within the policy period, regardless of the date of discovery. Davis v. Poelman, 319 So.2d 351 (La.1975); J.M. Brown Const. Co. v. D & M Mechanical Constr., Inc., 222 So.2d 93 (La.App. 1st Cir.1969), and cases cited therein.
The basis for INA's contention that there was no coverage afforded to plaintiffs is predicated upon the definitions of "bodily injury" and "property damages" contained in the policy. These terms are defined under the Definitions section of the policy as:
"When used in this policy (including endorsements forming a part hereof):
* * * * * *
`bodily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
* * * * * *
`completed operations hazard' includes bodily injury and property damage arising out of operation or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
(1) when all operations to be performed by or on behalf of the Named Insured *358 under the contract have been completed,
(2) when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed, or
(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.
Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.
The completed operations hazard does not include bodily injury or property damage arising out of
(a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,
(b) the existence of tools, uninstalled equipment or abandoned or unused materials, or
(c) operations for which the classification stated in the policy or in the Company's manual specifies `including completed operations';

* * * * * *
`occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured;

* * * * * *
`property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period;" (Emphasis added.)
The completed operations coverage was added to the policy by endorsement GL 102. The Coverage Part of the policy provides:
"COVERAGE A-BODILY INJURY LIABILITY
COVERAGE B-PROPERTY DAMAGE LIABILITY
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence ...".
It is the contention of INA that the definitions of bodily injury and property damage preclude coverage under this policy for completed operations beyond the policy term as the loss and resulting damages did not occur within the policy term from September 20, 1977 through September 20, 1980, citing Oceanonics, Inc. v. Petroleum Distributing Co., 280 So.2d 874 (La.App. 3rd Cir.1973), affirmed 292 So.2d 190 (La. 1974), and Nash v. Western Cas. and Sur. Co., 406 So.2d 176 (La.1981). In these cases the courts interpreted the policies to only provide completed operations coverage for bodily injury and property damage occurring during the policy term. A policy provision for completed operations coverage does not necessarily mean that the insurer has an obligation for coverage forever.
It is the contention of plaintiffs that the policy is vague and ambiguous. Plaintiffs also argue that the policy should afford coverage since Stuckey thought it covered all construction he had done in the past and that the limiting of coverage to the policy term by the wording of the policy would not be within the ordinary understanding of Stuckey as a reasonably prudent businessman. Plaintiffs also urge that coverage should be found under an "exposure theory" contending that the *359 plaintiffs were exposed to the risk during the policy term even though it was discovered after the expiration of the policy term citing Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976 (5th Cir. 1985); Porter v. American Optical Corp., 641 F.2d 1128 (5th Cir.1981). We do not find these cases applicable to this factual situation. We are only concerned with the question of whether or not the policy provides coverage for bodily injury or property damage for acts which occur during the policy period, but which manifest themselves after the expiration of the policy period. Insurance companies have the right to limit coverage in any manner they desire, so long as the limitations are not in conflict with statutory law or public policy and so long as the limitations are unambiguous and easily understandable. Oceanonics, Inc. v. Petroleum Distributing Co., supra; Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225 (La.1979). We find the limitation of coverage for bodily injury and property damage under completed operations coverage to occurrences within the policy term is reasonable and unambiguous in the INA policy issued to Stuckey. See Travelers Ins. Co. v. C.J. Gayfer's & Co., 366 So.2d 1199 (Fla.App.1979). We do not agree with plaintiff's argument for extension of insurance coverage as the policy was by its language limited to coverage of bodily injuries and property damages from completed operations occurring during its term.
We find that the trial court was not clearly wrong or manifestly in error in finding that the policy issued by INA to Stuckey only afforded coverage for bodily injury and property damage for completed operations occurring during the policy term and that the claim plaintiffs sought to assert for bodily damage and property damage from Stuckey's completed operations did not occur during the policy term but well after the expiration of the policy term.
For these reasons we pretermit a discussion of the plaintiffs-appellants' other assignments of error and affirm the judgment of the trial court.
All costs of these proceedings are taxed to plaintiffs-appellants.
AFFIRMED.
NOTES
[*] Judge Hugh E. Brunson of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Frank Warren, Jr. was never served with process as a defendant to the main demand or on the third party demand, nor did he make an appearance or ever file responsive pleadings. For this reason the claims against him were not tried.
[2] LSA-C.C. Art. 1853 became effective on January 1, 1985. However, this article reproduces the substance of LSA-C.C. Art. 2291 (1870), and does not change the law in effect at the time the claim sued on occurred.