**BLUE STREAK INDUSTRIES, INC.**

v.

**N.L. INDUSTRIES, INC., et al.**

Civ. A. No. 84–3459.

United States District Court,
E.D. Louisiana.

Dec. 29, 1986.

John F. Emmett, Emmett, Cobb, Waits & Kessenich, New Orleans, La., for plaintiff.

Maureen O. Sullivan, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, La., for N.L. Industries.

Stephen W. Glusman, Glusman, Moore, Wilkinson, Arbour, Broyles & Glusman, Baton Rouge, La., for Liberty Mut. Ins. Co., defendant and third party defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Plaintiff, Blue Streak Industries, Inc. (Blue Streak), sued Stranahan Gear Company, Inc. (Stranahan)[1] and N.L. Industries, Inc. (N.L.), alleging that Stranahan manufactured defective planetary gear boxes which were sold by N.L. to Blue Streak. Blue Streak alleges that these defective planetary gear boxes were installed on the M/V MARK DANOS, a self-propelled jack-up vessel manufactured by Blue Streak, resulting in various items of damage. In addition, Blue Streak, as well as N.L. by way of a third-party demand, sued Liberty Mutual Insurance Company (Liberty Mutual) alleging that Liberty Mutual's comprehensive general liability policy issued to Stranahan provides coverage for the damages claimed by Blue Streak.

Before the Court is Liberty Mutual's motion for summary judgment on the issue of coverage. Liberty Mutual contends that it provides no coverage for the damages sought because there was no policy in effect at the time of the failure of the planetary gear boxes. The comprehensive general liability policy issued by Liberty Mutual to Stranahan had a term of January 1, 1983 to January 1, 1984. The first failure of a planetary gear box on the M/V MARK DANOS occurred on February 18, 1984.

N.L. disputes the fact that the policy period expired on January 1, 1984. As recently stated by the Fifth Circuit Court of Appeals in *Professional Managers v. Fawer*, 799 F.2d 218 at 222 (5th Cir.1986),

> The mere existence of a disputed factual issue ... does not foreclose summary judgment. The dispute must be genuine, and the facts must be material.

> An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine. Trial of such an issue would be wasted effort.

In support of its argument, N.L. refers to the declarations page of the policy which shows a stamp marked "Cancelled" and a stamp stating "This Policy Was Adjusted February 17, 1984 And Audit Statement Passed To Accountant." Despite ample time having been allowed for discovery, N.L. did not offer any evidence, such as depositions, answers to interrogatories, admissions or affidavits to show that the policy was renewed or put into force by Stranahan. In fact, Blue Streak admitted that the policy period expired on January 1,

---

1. Stranahan is in bankruptcy and pursuant to 11 U.S.C. § 362(d), an automatic stay as to any actions against Stranahan is in effect.

1984. There is no genuine issue as to the expiration date of the policy. Clearly, the policy, by its express terms, expired on January 1, 1984.

Blue Streak contends, as does N.L. in the alternative, that the policy provides coverage, even though the gears failed after the policy expired, because the tort or breach of warranty which forms the basis of this lawsuit, i.e., the improper manufacture and sale of the gears to Blue Streak, amounted to an "occurrence" during the policy period and further, that damage to the gears occurred in "microtraumas" during the policy term from the moment the gears were installed on the vessel. This issue presents to the Court a precise question of policy interpretation and law.

The policy Liberty Mutual issued to Stranahan provides that the insurer "will pay ... all sums which the *insured* shall become legally obligated to pay as damages because of ... *property damage* to which this policy applies, caused by an *occurrence....*" The policy defines "property damage" as meaning "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use as caused by an *occurrence* during the policy period." "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in ... *property damage* neither expected nor intended from the standpoint of the insured."

The term "occurrence" is commonly understood to mean the time negligence manifests itself causing actual damage, rather than the causative negligence. *Oceanonics, Inc. v. Petroleum Distributing Co.,* 280 So.2d 874 (La.App.1973), *aff'd,* 292 So.2d 190 (La.1974); *Trans Caribbean Lines, Inc. v. Trancor Marine, Inc.,* 748 F.2d 568 (11th Cir.1984); *Travelers Insurance Company v. C.J. Gayfer's and Co., Inc.,* 366 So.2d 1199, 1202 (Fla.App. 1st Dist.1979); *Prieto v. Reserve Insurance*

*Company,* 340 So.2d 1282, 1283 (Fla.App. 3d Dist. 1977); *Millers Mutual Fire Insurance Company of Texas v. Ed Bailey, Inc.,* 103 Idaho 377, 647 P.2d 1249 (Idaho 1982); *Singsaas v. Diederich,* 307 Minn. 153, 238 N.W.2d 878, 880 (Minn.1976); *Remmer v. Glens Falls Indemnity Company,* 140 Cal App.2d 84, 295 P.2d 19, 57 A.L.R.2d 1379 (Cal.App. 1st Dist.1956); 1 Long, The Law of Liability Insurance, § 11.02.

■ N.L. cites three Louisiana cases that have held that the term "accident" refers to the tortious act which ultimately caused the property damage: *Kendrick v. Mason,* 234 La. 271, 99 So.2d 108 (La.1958); *Taylor Contracting & Supply Company v. American Mutual Liability Insurance Co.,* 163 So.2d 450 (La.App. 2d Cir.1964); and *Audubon Coin & Stamp Co. v. Alford Safe & Lock Co.,* 230 So.2d 278 (La.App. 1st Cir.1969). *Kendrick, Taylor,* and *Audubon* are distinguishable from the instant case. The policies in those cases required the insurer to pay all sums which the insured became obligated to pay as damages because of destruction of property caused by "accident." The policies contained no provision to the effect that the coverage applied only to property damage which occurred during the policy period. In contrast, the policy issued by Liberty Mutual in the instant case binds Liberty Mutual to pay sums which the insured may become obligated to pay as damages caused by an "occurrence", rather than an "accident". The Liberty Mutual policy defines "occurrence" consistently with the common meaning as an accident which results in property damage. The definition of "occurrence" is silent as to the period of coverage and must be read together with the definition of "property damage" which requires that the damage must "occur during the policy period," or be "caused by an occurrence during the policy period." Despite the complex nature of these definitions, the policy unambiguously provides that coverage is provided only for property damage occurring during the policy period. *See*

*Oceanonics*, 280 So.2d at 879–880; *Travelers*, 366 So.2d at 1202.

■ In support of the argument that the planetary gear boxes experienced "microtraumas" during the policy period, Blue Streak submitted the affidavit of Dennis Good, President of Blue Streak Industries, Inc., who stated that improper sizing of the Stranahan gear boxes created numerous "microtraumas" which occurred shortly after installation in March, 1983. Good's statement is not supported by either physical or scientific evidence, despite the fact that it was offered on the eve of trial subsequent to the discovery period. However, even assuming that Good's statement is accurate, the viewpoint that an accident may be a gradual process and is covered by the policy period even if its results occur after the policy expires, is the minority view which this Court declines to follow. *See Singsaas v. Diederick*, 238 N.W.2d at 881. *But see The Travelers v. Humming Bird Coal Co.*, 371 S.W.2d 35 (Ky.1963); *Kissel v. Aetna Casualty & Surety Co.*, 380 S.W.2d 497 (Mo.App.1964).

■ Moreover, the "microtraumas" did not cause any discernable injury until the actual failure of the gears. The first identifiable event other than the alleged causative negligence was the failure of a planetary gear box on February 18, 1984. Thus, the first "occurrence" was beyond the policy period. Coverage cannot be reasonably extended to include liability for an occurrence beyond the policy period.

■ Having found that the policy does not cover the damages claimed by Blue Streak, the Court need not address the parties' remaining arguments. However, the Court notes that even were the policy period to have included the dates of the alleged occurrences, the policy exclusions (n)[2] and (p)[3] would nevertheless defeat coverage. These exclusions are not in conflict with the definitions of "completed operations hazard" and "products hazard" and do not create an ambiguity, as urged by Blue Streak. The definitions in a policy are ancillary to the operative language sections and cannot provide coverage for a type of damage merely by virtue of definition. Furthermore, the policy specifically provides that it will pay only for "property damage ... to which the policy applies." The exclusions section of the policy clearly sets forth those forms of property damage to which the policy will not apply. The Court finds no ambiguity or conflict.

Accordingly,

IT IS ORDERED that Liberty Mutual's motion for summary judgment against Blue Streak and N.L. is GRANTED.

---

2. Exclusion (n) of the policy excludes coverage for "property damage to the named insured's products arising out of such products or any part of such products." The policy defines "named insured's products" as "goods or products manufactured, sold, handled or distributed by the named insured." Since there is no dispute that Stranahan manufactured the planetary gear boxes, the planetary gear boxes are the "named insured's product," and exclusion (n) is applicable.

3. Exclusion (p) of the insurance policy excludes coverage for
   damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Given its plain meaning, it is clear that exclusion (p) is intended to exclude from coverage the cost of preventative or curative action by withdrawal of a product in a situation in which a danger is to be apprehended and therefore, applies to those planetary gear boxes which did not fail, but were removed and replaced due to a suspected defect.