665 So.2d 43 (1995)
ST. PAUL FIRE & MARINE INSURANCE COMPANY
v.
Guy Russell VALENTINE, Sr., Charles Parish Owens, Jr., Hartford Insurance Company and Maryland Casualty Company.
No. 95 CA 0649.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*44 Gregory J. McDonald, New Orleans, for St. Paul Fire & Marine Insurance Company.
Dale E. Branch, Bogalusa, for Charles P. Owens, Jr.
James G. Wyly, III, New Orleans, for Hartford Insurance Company.
Richard S. Vale, Metairie, for Maryland Casualty Company.
Clayton S. Knight, Franklinton, for Guy R. Valentine.
Before LeBLANC, WHIPPLE and FOGG, JJ.
LeBLANC, Judge.
Plaintiff appeals from a summary judgment dismissing its subrogation claim against one defendant on the basis that there was no "occurrence" under the policy issued by the defendant during the applicable policy period. We affirm.
*45 On September 2, 1991, a building owned by Sun Distributing, Inc., and insured by plaintiff, St. Paul Fire & Marine Insurance Company (St. Paul), was damaged by fire. St. Paul alleges it paid Sun Distributing $378,375.06 in damages, and was legally and conventionally subrogated to all of its insured's rights against those responsible for the fire. On August 25, 1992, St. Paul filed suit against Guy Russell Valentine, Sr., Hartford Insurance Company (Valentine's alleged liability insurer), Charles Parish Owens, Jr., and Maryland Casualty Company (Owens' alleged liability insurer). According to the allegations of St. Paul's petition, the fire was caused by "an electrical fault in defective wiring to an air conditioning system, and would not have occurred but for defects in the wiring and the fact that the wiring was fused with 200 amp fuses rather than 30 amp fuses." St. Paul further alleges that the wires and fuses were installed by either Valentine or Owens, an employee of Owens Service Center, in 1984 or early 1985. It was alleged that Maryland was the liability insurer of Owens Service Center, Inc., at the time of the installation of the air conditioning system. Maryland denied there was coverage under the policy and refused to provide Mr. Owens with a defense. Subsequently, Mr. Owens filed a third-party demand seeking recovery against Maryland in the event he was held liable on the main demand, as well as damages for Maryland's refusal to defend him.
Maryland filed a motion for summary judgment against St. Paul on two grounds: (1) that its policy did not provide coverage because the fire did not occur during the policy period; and (2) that there was no evidence Charles Owens was responsible for the installation of any of the wires or fuses which allegedly caused the fire. St. Paul filed a cross motion for summary judgment on the issue of the proper interpretation of the Maryland policy. The trial court agreed with Maryland's argument that there was no "occurrence" during the policy period and granted Maryland's motion for summary judgment, dismissing St. Paul's subrogation claim against Maryland. The judgment also denied St. Paul's cross motion for summary judgment. St. Paul appealed the judgment. A separate appeal was taken by Mr. Owens.
ISSUES
On appeal St. Paul raises three issues:
1. Whether the trial court erred in not considering the reasonable expectations of the insured that coverage would apply where the installation of the defective air conditioning system occurred during the policy period but the damages did not manifest themselves until after the policy lapsed?
2. Whether the trial court erred in adopting as a "trigger" for coverage under the Maryland policy the theory of manifestation of damages, as opposed to the "exposure" trigger adopted by the Louisiana Supreme Court in Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992)?
3. Whether the trial court erred in failing to find under the Maryland policy that the installation of a defective air conditioning system constituted "property damage" and an "occurrence" during the policy period?
The following issues were raised by Charles Owens in his appeal:
1. Whether the trial court erred in granting Maryland's motion for summary judgment without considering the third party claims filed by Mr. Owens against Maryland?
2. Whether Maryland had a duty to defend Mr. Owens in this suit and, if so, has that obligation been negated by the granting of the summary judgment?
3. Whether there were any factual issues precluding summary judgment.
In addition, Mr. Owens adopted those issues raised by St. Paul in its appeal, in so far as they were not adverse to his interest.

ANALYSIS
On appeal appellate courts must review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Schroeder v. Board of *46 Sup'rs, 591 So.2d 342, 345 (La.1991). A motion for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Louisiana Nat. Bank v. Slaughter, 563 So.2d 445, 447 (La.App. 1st Cir.1990).
The basis of St. Paul's claim is its argument that the policy issued by Maryland is an "occurrence" policy under which coverage is effective if the negligent acts which caused the fire occurred during the policy period, even if the fire occurred outside the policy period. In opposition, Maryland contends summary judgment dismissing St. Paul's claims was proper because no "occurrence" within the meaning of the policy took place during the policy period. In support of its motion for summary judgment, Maryland filed a copy of the comprehensive general liability policy at issue and an affidavit establishing that the policy was in effect from 2/28/84 until 2/28/86. The fire which damaged the property owned by St. Paul's insured occurred on September 2, 1991.
The policy issued by Maryland obligates it to pay sums which the insured becomes obligated to pay as damages as the result of an "occurrence". The policy defines an "occurrence" as an "accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." "Property damage" is defined by the policy as "(1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."
An insurance policy is a contract between the parties. The parties' intent, as reflected by the words in the policy, determine the extent of coverage. Louisiana Ins. Guar. v. Interstate Fire, 93-0911 (La. 1/14/94), 630 So.2d 759, 763. In determining the meaning of the words of an insurance policy, they are to be given their generally prevailing meaning. When the meaning of the words is clear, the court should look no further in determining the intent of the parties. Schroeder, 591 So.2d at 345. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Ins. Guar., 93-0911, 630 So.2d at 763.
We conclude the term "occurrence" is generally understood to mean the time and/or event when negligence manifests itself by causing actual damages, rather than the commission of the causative negligence. Alberti v. WELCO Mfg. of Texas, 560 So.2d 964, 965 (La.App. 4th Cir.), writ denied, 565 So.2d 945 (1990); Blue Streak Industries v. N.L. Industries, Inc., 650 F.Supp. 733, 735 (E.D.La.1986). See also Jackson v. Welco Mfg. of Texas, 612 So.2d 743, 744 (La.App. 4th Cir.1992); Prudential Property Cas. Ins. Co. v. Stuckey, 486 So.2d 352, 356-59 (La. App. 3rd Cir.1986). Although the definition of "occurrence" in the Maryland policy does not provide that it must take place during the policy period, this definition must be read together with the definition of "property damage" which does require that the damage "occur during the policy period." No single portion of an insurance contract should be construed independent of the whole, i.e., the policy should be considered in its entirety. Benton Casing Service, Inc. v. Avemco Ins., 379 So.2d 225, 231 (La.1979); Hartford Acc. & Indem. v. Joe Dean Contr., 584 So.2d 1226, 1229 (La.App. 2nd Cir.1991). When the two definitions are read together, its is clear that coverage is limited to "occurrences" which take place during the policy period. Blue Streak Industries, 650 F.Supp. at 735; McKenzie & Johnson, 15 Louisiana Civil Law Treatise § 183, p. 314. The mere fact that an insurance policy is a complex instrument requiring analysis to understand it does not render it ambiguous. Louisiana Ins. Guar. v. Interstate Fire, 93-0911, 630 So.2d at 766.
*47 In Oceanonics, Inc. v. Petroleum Distributing Company, 292 So.2d 190 (La.1974), it was alleged that the defendant's insured performed defective welding on the boom of a crane during the policy period. After the policy expired, the weld failed, causing the boom to collapse. Applying the policy definition of "occurrence", which was similar to the definition applicable in this case[1], the Supreme Court concluded public policy did not prohibit an insured from excluding coverage for damages occurring after the policy expires, but resulting from a delictual act committed during the policy period.
In Alberti v. WELCO Mfg. of Texas, 560 So.2d 964 (La.App. 4th Cir.1990), sheetrock walls were installed in the plaintiff's home while an insurance policy was in effect. However, plaintiffs did not notice any discoloration of the sheetrock until after the policy expired. Construing policy definitions identical to the ones in the Maryland policy, the Fourth Circuit held that, even if the chemical reaction which caused the discoloration began immediately upon application of the sheetrock mud, there was no "occurrence" under the policy until the discoloration of the walls occurred, which was after the policy lapsed.
In Prudential Property. Cas. Ins. Co. v. Stuckey, 486 So.2d 352 (La.App. 3rd Cir. 1986), defendant constructed a house in 1978, which he subsequently sold to plaintiffs. In 1982 a fire occurred in the house, which allegedly started as a result of a defect in the home's brick fireplace. The insurance policy in effect at the time of the home's construction was not renewed beyond 1980. The policy included the same definitions of "occurrence" and "property damage" as the Maryland policy herein. The Prudential court held the policy did not provide coverage for property damage caused by acts which occurred during the policy period, but which manifested themselves only after the policy lapsed.
Considering the language of the policy at issue herein, as well as the jurisprudence interpreting similar and/or identical provisions, we agree with the trial court's conclusion that there was no "occurrence" under the Maryland policy during the applicable policy period. Although the alleged negligent act occurred during the policy period, no property damages took place as a result thereof until after the policy expired. Coverage can not reasonably be extended to include liability for an occurrence beyond the policy period.
We find no merit in St. Paul's argument that the Maryland policy should be interpreted in the light of a reasonable insured's expectation that the policy would provide coverage based on when the negligent act takes place, rather than when the damages are sustained or discovered. A court may look to the reasonable expectations of the parties in attempting to ascertain the parties' intent only if the words of the policy are ambiguous. When the words of the policy are clear and unambiguous, the court should look no further in determining the intent of the parties, and the insurance contract must be enforced as written. Louisiana Ins. Guar., 93-0911, 630 So.2d at 764; Schroeder, 591 So.2d at 345. In this case, we have already concluded the definitions in question were not ambiguous.
Additionally, we reject St. Paul's contention that the Supreme Court's holding in Cole v. Celotex Corp., 599 So.2d 1058 (La.1992), mandates that coverage under all liability policies be triggered by mere exposure to harmful conditions during the policy period. In Cole the Supreme Court did adopt the exposure theory as the trigger for coverage for claims brought by plaintiffs who had suffered long-term exposure to asbestos. *48 However, in reaching this result, the Court noted several times "[t]he uniqueness of asbestosis cases and the difficulties of trying to fit such cases within the framework of concepts designed to handle traditional torts...." Cole, 599 So.2d at 1065. Further, in a concurrence, Justice Dennis noted that "[t]he medical evidence ... established that the plaintiffs began to sustain tissue damage shortly after the initial inhalation of asbestos fibers; and that plaintiffs sustained distinct bodily injury in each year of their employment." Cole, 599 So.2d at 1084. In light of these circumstances, particularly the special considerations unique to asbestosis and other latent disease cases, we believe the holding in Cole is limited to cases of a similar nature and was not intended to have application beyond those types of cases.
In addition to the issues raised in St. Paul's appeal, Mr. Owens also argues the trial court erred in granting summary judgment without considering his third-party claims against Maryland, particularly the claim for failure to defend. This contention is without merit. Maryland's motion for summary judgment was directed only to the claims of St. Paul, and it was only St. Paul's claims against Maryland that the trial court dismissed. Therefore, the issues raised by Mr. Owens' third-party demand, including the duty to defend, were not before the trial court at the time it ruled on Maryland's motion for summary judgment, and are not now properly before this Court.
For the above reasons, the judgment of the trial court is affirmed. St. Paul is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] In Oceanonics the policy defined an "occurrence" as "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured." See Oceanonics, Inc. v. Petroleum Distributing Company, 280 So.2d 874, 876 (La.App. 3rd Cir.1973, aff'd, 292 So.2d 190 (La.1974). The definition of "occurrence" in the present case is substantially the same, except that it does not include the language "during the policy period". However, when the definition of "occurrence" is read together with the definition of "property damage", the coverage provided by the Maryland policy is clearly limited to damages which took place during the policy period, as was the case in Oceanonics.