673 So.2d 274 (1996)
ORLEANS PARISH SCHOOL BOARD
v.
SCHEYD, INC., et al.
No. 95-CA-2653.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1996.
Rehearing Denied May 31, 1996.
*275 Robert M. Rosenberg and Larry C. Becnel, Polack, Rosenberg & Endom, New Orleans, for appellee, Orleans Parish School Board.
J. Michael Johnson and Gerald A. Melchiode, Galloway, Johnson, Tompkins & Burr, New Orleans, for appellee, Hammond Construction, A Division of Scheyd, Inc.
William W. Hall, Metairie, for appellee, Hudson Mechanical, Inc.
Darryl J. Foster, Lemle & Kelleher, New Orleans, for appellant, United States Fidelity & Guaranty Co.
Before LOBRANO, PLOTKIN and MURRAY, JJ.
LOBRANO, Judge.
United States Fidelity and Guaranty Company (USF & G) appeals a trial court judgment which denied its motion for summary judgment on coverage issues and granted its insured's motion for summary judgment requiring USF & G to provide a defense in the above matter.
Initially we observe that the denial of a motion for summary judgment is an interlocutory decree which is not appealable absent a showing of irreparable injury. La. C.C.Pro. art. 2083. USF & G has not shown how it has been or will be irreparably harmed because of the trial court's rejection of its motion for summary judgment, especially in view of the fact that if it must defend its insured, it will remain in the litigation.
However, in Lawson v. Straus, 95-1017, 95-1028 (La.App. 4th Cir. 8/23/95), 660 So.2d 892, writ denied 95-2271 (La. 12/8/95), 664 So.2d 422 and 95-2325 (La. 12/8/95), 664 So.2d 423, we held that a partial summary judgment which requires an insurer to defend its insured is a final appealable judgment. Although the concurring judge in that case questioned the rationale supporting the majority's reasoning and invited the Supreme Court to revisit the issue, that court declined to do so. See, Plotkin, J. concurring at 660 So.2d 897. See also, Edwards v. Daugherty, 95-702 (La.App. 3rd Cir, 8/16/95), 663 So.2d 102 where the court noted the *276 "intolerable problems of multiple appeals and piecemeal litigation" where partial summary judgments are rendered in connection with issues of coverage and duty to defend.
In view of our holding in Lawson, the partial summary judgment which requires USF & G to defend its insured is a final judgment, subject to direct appeal. And, although we will not consider USF & G's appeal of the denial of its motion for summary judgment, since the issue of duty to defend necessarily requires consideration of coverage issues, we will address USF & G's coverage arguments only to the extent necessary to consider their duty to defend.
FACTS:[1]
The instant litigation arises out of the construction of Robert Moton Elementary School. The school was completed in 1987. Hammond Construction, a division of Scheyd, Inc. (Hammond) was the general contractor, and Hudson Mechanical was the plumbing subcontractor. USF & G issued a Comprehensive General Liability Policy to Hudson for the policy period February 4, 1985 to February 4, 1986.
Sometime in 1991, the Orleans Parish School Board, owner of the building, became aware of possible plumbing problems. Drain stoppages and sewer odors became prevalent. As a result of various investigative work by the School Board, including excavation, it was determined that 90% of the sanitary sewer piping was disconnected from the vertical risers in the slab. In August of 1993, the School Board filed the instant suit against Hammond and Hudson. The Board seeks to hold Hammond and Hudson liable for the faulty installation of the plumbing and plumbing supports.[2] Hammond cross-claimed against its sub-contractor, Hudson, and third partied USF & G, Hudson's liability insurer. Hudson also third partied USF & G in its capacity as Hudson's comprehensive liability insurer for the period February 4, 1985 to February 4, 1986.[3] USF & G denied coverage, refused to defend Hudson and moved for summary judgment. Hammond, the School Board and Hudson all opposed USF & G's motion. Hudson filed a cross motion for summary judgment on the duty to defend issue.
As we noted earlier in this opinion, the appeal of the grant of Hudson's motion is properly before us, and, to the extent necessary to determine the issue of duty to defend, we will address USF & G's coverage arguments. However, there is no irreparable harm in the denial of USF & G's summary judgment on the coverage issues, and thus, we decline to exercise our supervisory jurisdiction and, ex proprio motu, we dismiss USG & G's appeal on that issue.

DUTY TO DEFEND:
In Micelotti v. Karno, 542 So.2d 734, 736 (La.App. 4th Cir.1989), we set forth the guiding precepts when determining if an insurer has a duty to defend. We stated:
A liability insurer has a duty to defend its insured against claims by a third party apart from its duty to indemnify its insured. Bourque v. Lehmann Lathe, Inc., 476 So.2d 1129, 1131 (La.App. 3rd Cir. 1985), writ den. 479 So.2d 362 (La.1985). An insurer's obligation to defend suits against its insured is broader than its liability for damage claims. American Home Assurance Co. v. Czarniecki, 255 La. 251, 230 So.2d 253, 259 (1969); Hanover Ins. Co. v. Highlands Ins. Co., 511 So.2d 1296, 1297 (La.App. 2nd Cir.1987); Bourque, supra at 1131. The insurer's duty to defend suits brought against its insured is determined by the allegations of the petition, not by the insurer's interpretation of what liability may be covered by the policy. American Home Assurance, supra 230 So.2d at 259; Hanover, supra at 1297. The insurer is obligated to furnish a defense unless the petition unambiguously excludes coverage. Id. The insurer is obligated to defend the insured in an action where the pleadings allege coverage, *277 even though in fact there is no coverage. Id.

The allegations of the petition filed by the School Board are to be liberally interpreted to determine if they assert grounds that bring the claim within USF & G's duty to defend Hudson. Ellis v. Transcontinental, 619 So.2d 1130 (La.App. 4th Cir.1993), writ denied, 625 So.2d 1043 (La.1993). The pertinent portions of that petition allege the following facts:
1) Hammond sub-contracted with Hudson to construct and install the plumbing, drain, drainage and sewerage systems at the Moton School.
2) The drainage, plumbing and sewer systems have not functioned properly because they were not constructed in accordance with contract documents or otherwise in a workmanlike manner. Specifically the vertical risers (hangers) had become disconnected from the slab causing the pipes to become disconnected. In addition, contrary to the contract requirements, the required excavation below the pipes was not undertaken. Because of these deficiencies the sewer and drain piping below the school collapsed or failed.
3) As a result, the School Board sustained extensive repair damage, as well as other damages, including costs for meal deliveries to the school, temporary restroom facilities and overhead cost to the School Board.
4) All defendants are alleged to be liable in solido for the inadequate, defective drainage and sewer systems caused by their failure to perform their contractual and implied-in-law obligations.
USF & G advances several arguments why coverage is not afforded. Although those arguments are principally directed to its appeal of the trial court's denial of its summary judgment, as we noted earlier, we will address each in the context of the court's holding that USF & G has a duty to defend.
First, USF & G relies on the policy language contained in Coverage B which deals with property damage. The insuring agreement in Coverage B, in pertinent part, provides:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
* * * * * *
B. Property damage to which this insurance applies caused by an occurrence....
The policy defines "occurrence" as follows:
Occurrence means an accident, including continuous or repeated exposure to conditions, which results in a bodily injury or property damage neither expected nor intended from the standpoint of the insured.
Property damage is then defined as follows:
Property damage means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
Relying on the holdings of Korossy v. Sunrise Homes, Inc., 94-473 through 94-502 (La. App. 5th Cir. 3/15/95), 653 So.2d 1215, writ denied 95-1536, 95-1522 (La. 9/29/95), 660 So.2d 878; Jackson v. Welco Manufacturing of Texas, 612 So.2d 743 (La.App. 4th Cir. 1992) and St. Paul Fire and Marine Insurance Company v. Valentine, 95-0649 (La. App. 1st Cir. 11/9/95), 665 So.2d 43, writ denied 95-2961 (La. 2/9/96), 667 So.2d 534, USF & G argues that, as a matter of law, property damage does not occur until it manifests itself. Since the School Board did not discover the damage until 1992, six years after its policy expired, USF & G urges that no property damage occurred during the policy period. We disagree.
In Korossy, our brethren of the Fifth Circuit concluded, in a case involving differential ground settlement resulting in damage due to faulty construction, that the "better rule is to deem the occurrence took place when the damage was discovered". While we do not disagree with that holding under the facts of that particular case, we cannot make the "quantum leap" and say that the manifestation theory is applicable, as a matter of law, *278 in all cases.[4] USF & G's policy says that property damage must occur during the policy period. It does not say the damage must become noticeable during the policy period. Perhaps manifestation can be a viable rule when there is no credible proof of when the damage actually occurs. However, in the limited context of deciding whether the petition in the instant case unambiguously excludes coverage, application of the manifestation rule cannot support a conclusion that there is absolutely no coverage, and thus no duty to defend.
While the School Board's petition does not allege a specific date as to when the damage occurred, it does state, in paragraph XIV, that the plumbing, drain and sewer systems at the Moton School have not functioned properly. Paragraph XIV concludes by alleging "[b]ecause of these defects and deficiencies, and others, the sewer and drain piping below the school collapsed or failed in numerous instances, making the transmission of water and the drainage and evacuation of sewage impossible." Those allegations do not unambiguously exclude coverage by virtue of USF & G's "manifestation theory" argument.[5] It is just as reasonable for a court to conclude, after a trial on the merits, that the odor of sewage and the clogged drains are not damage, only the evidence of damage. Thus those manifestations would not necessarily evidence the time frame in which damage actually occurred. Although, after a trial on the merits, USF & G's arguments may have merit, in the limited context of this case it is not necessary that we issue a definitive ruling on the "manifestation" versus "occurrence" arguments.
Next USF & G argues that there was no occurrence as defined in the policy. Specifically, USF & G relies on Fredeman Shipyard v. Weldon Miller Contractors, Inc., 497 So.2d 370 (La.App. 3rd Cir.1986), and the cases cited therein, for the proposition that where the liability of a contractor is dependent solely on his improper construction or faulty repair work, there is no "occurrence" and hence no coverage. Our interpretation of Fredeman, however, is that coverage was denied because the policy in that case contained a "work product" exclusion. That exclusion denied coverage for faulty or negligent workmanship. Thus, we find that the rationale of Fredeman is based, not on the notion that improper or defective workmanship can never be an "occurrence", but on the fact that it was excluded by the "work product" exclusion.[6] The existence of a "work product" exclusion is the real thrust of USF & G's argument.
The School Board's petition in the instant case undoubtedly alleges that defective or improper workmanship, at least on the part of Hudson, was the cause of its damages. USF & G's policy, immediately following the insuring agreements of Coverage A and B, recites a list of exclusions. Exclusion "O" is a work product exclusion. Without more, USF & G's argument may have merit. However, under Section VI of the Broad Form Comprehensive endorsement, exclusion "O" is replaced with the following pertinent exclusion:
(d) to that particular part of any property, not on premises owned by or rented to the insured

*279 (i) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, or
(ii) out of which any property damage arises, or
(iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.
(3) with respect to the completed operations hazard ... to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.
In order to put these exclusions in perspective, the coverage for "Completed Operations Hazards" must be understood. That coverage includes:
... property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the ... property damage occurs after such operations have been completed ... and occurs away from the premises owned by or rented to the named insured.
Seemingly, pursuant to the above definition of "Completed Operations Hazards" USF & G's policy provides coverage for the damage alleged to have been caused by Hudson's defective work product because the damage apparently occurred after the work was completed. USF & G's argument, however, is that the exclusions in the "Broad Form Comprehensive" endorsement, quoted above, negate the coverage afforded under the "Completed Operations Hazard." We do not find USF & G's solution that simple.
The exclusion pertains to the damage "to work performed" by Hudson arising out of such work. Even a liberal interpretation of that exclusion would seem to suggest that only the damage to the pipes themselves are excluded, i.e. "the work" of Hudson.[7] The "Completed Operations" coverage, however, covers all damage without limitation. We cannot say that those provisions are unambiguous in excluding coverage under the facts alleged in the petition. See, Serigne v. Wildey, 612 So.2d 155 (La.App. 5th Cir.1992), writ denied 613 So.2d 994 (La.1993).
The most persuasive argument in favor of requiring a defense by USF & G, however, is the fact that if we were to adopt USF & G's argument we would, in effect, be negating the "Completed Operations" coverage which Hudson apparently sought and paid for. It would be illogical, and perhaps against public policy, to provide a specific coverage, collect a premium, then by way of endorsement, totally exclude that coverage.
For these reasons, and only in the context of a duty to defend, we cannot say that the School Board's petition unambiguously excludes coverage. After trial on the merits, perhaps the facts will support USF & G's coverage arguments which are reserved to it for further consideration during these proceedings. At this juncture, it must provide a defense to its insured.
AFFIRMED.
NOTES
[1] The basic facts are taken from the pleadings and the documentation filed in connection with the motions for summary judgment.
[2] Also made defendants in the School Board's suit were the architect, Gendusa/Piazza and Lucien T. Viven, Jr. & Associates, consulting engineers. They are not parties to the instant appeal.
[3] Hudson also third partied CNA as its CGL insurer from February 4, 1986 to present.
[4] In fact, the Fifth Circuit qualified its holding by stating: "Under the facts of these cases, property damage did not result until the damage manifested itself". Korossy, supra at 1226.
[5] Similarly, Jackson v. Welco Manufacturing of Texas, supra, and St. Paul Fire & Marine Insurance v. Valentine, supra, are not controlling. In Jackson, we held that damage occurred when plaintiff's walls became discolored. Obviously, in that case the damage was the discoloration, and thus it did not occur until the walls changed color. In Valentine, damages did not occur until a fire occurred years after the policy lapsed. There could not have been property damage until there was a fire. Both cases are factually distinguishable from the instant case.
[6] The cases relied on in Fredeman all contained work product exclusions. Ironically, Swarts v. Woodlawn, Inc., 610 So.2d 888 (La.App. 1st Cir. 1992), also cited by USF & G relied on Fredeman for the "no occurrence due to faulty construction" proposition. But, the court also acknowledged and held that the "work product exclusion" precluded coverage. See also, Vitenas v. Centanni, 381 So.2d 531 (La.App. 4th Cir.1980) and Bacon v. Diamond Motors, Inc., 424 So.2d 1155 (La.App. 1st Cir.1982), writ denied, 429 So.2d 131 (La.1983). In Riley Stoker Corp. v. Fidelity & Guaranty Ins. Underwriters, 26 F.3d 581 (5th Cir.1994) the court recognized that "[w]hat the Louisiana Courts have done is define occurrence by reference to the exclusions typically found in a comprehensive general liability policy." at 586.
[7] Of course, it is well settled that policy exclusions are to be strictly construed in favor of coverage. Garcia v. St. Bernard Parish School Bd., 576 So.2d 975 (La.1991).