**BARRY CONCRETE, INC.**

v.

**MARTIN MARIETTA MATERIALS, INC.**

**Civil Action No. 06–504–JJB–CN.**

United States District Court, M.D. Louisiana.

Jan. 28, 2008.

Emile Joseph, Jr., Robert Anthony Robertson, Allen & Gooch, Lafayette, LA, for Barry Concrete, Inc.

Michael David Ferachi, Jonathan G. Wilbourn, Juliann L. Keenan, McGlinchey Stafford PLLC, Baton Rouge, LA, for Martin Marietta Materials, Inc.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JAMES J. BRADY, District Judge.

This matter is before the court on a Motion for Summary Judgment (doc. 25) by Third–Party Defendant, Western World Insurance Company (hereinafter "Western World"). Martin Marietta Materials, Inc. ("Martin Marietta") and Barry Concrete, Inc. filed opposition motions (docs. 27 and 32, respectively). Western World has filed a reply brief (doc. 33). Oral argument is not necessary. Jurisdiction exists pursuant to 28 U.S.C. §§ 1332, 1367.

### Factual and Procedural Background

Barry Concrete, Inc. ("Barry") filed a complaint in the Louisiana 19th Judicial District Court naming Martin Marietta as a defendant.[1] This matter was removed to federal court on July 14, 2006.[2] Barry alleged that it purchased aggregate from Martin Marietta, and then Barry sold concrete containing this aggregate to Master Builders and Specialists, Inc.[3] Barry alleged that after the concrete was poured, it would not cure or harden.[4] Barry alleged that the material purchased from Martin Marietta was contaminated with sugar and that this contamination occurred during transport of the aggregate from Martin Marietta to Barry.[5] Barry incurred $378,000 in damages from allegedly removing and replacing the concrete slab and foundation.[6]

In its Answer, Martin Marietta denied liability for the alleged damages to Barry.[7]

Martin Marietta also sought third-party indemnity against Percy L. Wilson of Percy Wilson Trucking ("Wilson"), Western World Insurance Company, and Stratford Insurance Group.[8] Martin Marietta alleged that it contracted with Wilson to transport the aggregate material to Barry.[9] If the aggregate was contaminated with sugar as Barry alleged, Marietta claims that the contamination occurred during transport as a "direct result of the use, operation and/or maintenance of the truck owned by Wilson."[10] Therefore, any damage is the result of Wilson's alleged negligence.[11] Marietta also alleged that Western World had issued insurance to Wilson to cover negligence and contractual liability, and Marietta believes it is entitled to indemnity as a beneficiary or additional insured under the policy.[12]

### Western World's Argument

In its motion for summary judgment, Western World argues that no coverage is provided for the alleged contamination, and as a result, Western World should be dismissed with prejudice from the instant action. Western World acknowledges that it issued both a Cargo Policy and an Auto Policy to Wilson Trucking, but it denies that Martin Marietta was ever added as an additional insured. Western World argues that the Auto Policy is inapplicable to this action, and it further argues that exceptions to the Cargo Policy exclude all liability.

1. Barry's Petition for Damages (doc. 1, Exh. A) at 13.

2. *Id.* at 1.

3. *Id.* at 13.

4. *Id.* at 14.

5. *Id.*

6. *Id.*

7. Notice of Removal (doc. 1) at 36.

8. *Id.* at 39.

9. *Id.* at 41.

10. *Id.*

11. *Id.*

12. *Id.* at 42.

Barry Concrete and Martin Marietta contend that the policy language is ambiguous, and as a result, the insurance policy must be construed in favor of coverage.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. Rule Civ. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the burden at trial rests on the non-moving party, as it does here, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.*

Although this Court considers the evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the non-moving party. *Celo-*

*tex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also,* Fed. Rule Civ. P. 56(c).

### Analysis

### I. Cargo Policy

The Louisiana Supreme Court has held that cargo policies apply to damage to tangible cargo while in transport. *Borden, Inc. v. Howard Trucking Co.,* 454 So.2d 1081 (La.1983). "Cargo" is defined in the policy as "goods and merchandise for which you are legally liable ... and which are in your custody and in or on a covered 'auto'; or ... goods and merchandise for which you have assumed liability under a written lease, while in or on a covered 'auto.'"[13] In this case, the aggregate is clearly a form of goods over which Wilson Trucking had custody and control. Western World concedes that but for exceptions contained in the Cargo Policy, it would be applicable to the alleged contamination of the Martin Marietta aggregate transported as Wilson Trucking's cargo.[14] Therefore, this court is only left with the question of whether either of the exclusions cited by Western World are applicable.

■ Western World argues that the packaging and contamination exclusions remove coverage under the Cargo Policy. As the insurer, Western World bears the burden of proving the applicability of any exclusion to the policy. *Doerr v. Mobile Oil Corp.,* 754 So.2d 926 (La.2000). Any ambiguities in the application of policy exclusions must be construed in favor of coverage. *Yount v. Maisano,* 627 So.2d 148, 151 (La.1993).

Pursuant to the packaging and contamination exclusions:

This insurance does not apply to: ... (12) "Loss" caused by or resulting from any of the following: (a) Poor or insuffi-

---

**13.** Cargo Insurance Policy (doc. 23, Exh. C) at 1.

**14.** Memorandum in Support of Summary Judgment (doc. 23) at 11.

cient packaging or packing of the "cargo"; or poor packing of "cargo" in or on a covered "auto ... (d) Rust, corrosion, contamination, leakage, breakage, marring, or scratching." [15]

Western World contends that the aggregate was poorly "packaged" because it was loaded into a trailer that still contained sugar. During transport, the aggregate was "contaminated." As a result, Western World contends that the exclusions prevent coverage for any damage to the aggregate.

 Words in an insurance policy are to be given their plain, ordinary, and prevailing meaning. *Henry v. South Louisiana Sugars Co-op.*, 957 So.2d 1275, 1277 (La.2007). Although the term "contamination" is not defined in the Cargo Policy, contamination is commonly understood to mean: "to make unfit for use by introduction of unwholesome or undesirable elements" or "to soil, stain, or infect by contact or association." [16] In this case, the introduction of the undesirable element of sugar rendered the aggregate "unfit for use." Furthermore, Barry Concrete alleges that the aggregate "was contaminated with sugar," [17] and the Cargo Policy expressly excludes coverage of losses caused by "contamination" of the cargo. [18] Clearly, Barry understood the plain meaning of "contamination" in making its allegations, and as such, the court finds the parties' ambiguity arguments to be without merit. Barry's alleged losses are plainly excluded from coverage under the Cargo Policy pursuant to the contamination exclusion.

## II. Auto Policy

Barry and Martin Marietta contend that the Auto Policy provides coverage because the underlying allegations involve the maintenance and use of a covered auto. Western World argues that the Auto Policy does not cover damage or losses to cargo and is instead intended for coverage of auto accidents. In the event that the court determines that the Auto Policy covers the alleged damages, Western World contends that the policy exclusions for "care, custody or control," "pollution," "handling of property," or "completed operations" preclude coverage of these damages.

### A. Scope of the Auto Policy

 Under the language of the policy, Western World agrees to pay damages which the insured must pay because of "property damage ... caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " [19] From the language of the policy, an "accident" must occur to trigger coverage, and then the insured must establish that the accident was the result of the "ownership, maintenance or use" of a vehicle. With respect to automobile insurance policies, one would expect the definition of "accident" to be directed toward car collisions. However, the policy defines an "accident" as "includ[ing] continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.' " [20] In the context of this case, this definition is ambiguous. Clearly the "continuous and repeated exposure" of the aggregate to

**15.** Cargo Insurance Policy (doc. 23, Exh. C) at 2–3.

**16.** Webster's Seventh New Collegiate Dictionary at 180.

**17.** Barry's Petition for Damages (doc. 23, Exh. A) at ¶ 12.

**18.** Cargo Insurance Policy (doc. 23, Exh. C) at 2–3.

**19.** Auto Insurance Policy (doc. 23, Exh. D) at 2.

**20.** *Id.* at 11.

sugar resulted in damage to the aggregate as it would no longer harden into concrete. The failure to properly clean out the trucks which resulted in the mixing of aggregate and sugar could reasonably be interpreted as an "accident" resulting from "use" of an automobile under the policy.[21]

▮ Furthermore, the policy does not define the term "property damage." The alleged mixing of sugar and aggregate prevented the concrete from properly curing, and as a result, this mixing could clearly be a form of "property damage" within the plain meaning of the phrase. Ambiguous wording in insurance contracts must be construed against the insurer. *Yount*, 627 So.2d at 151. Accordingly, this court finds that the alleged damage falls within the scope of the Auto Policy.

### B. Exclusions to the Auto Policy

Western World argues that even if the alleged loss is within the scope of the Auto Policy, exclusions for "care, custody, or control," "pollution," "handling of property," and/or "completed operations" preclude coverage. The court will analyze these exclusions individually.

### 1. Care, Custody, or Control Exclusion

▮ According to the Auto Policy, the insurance does not apply to "property damage' to . . . property owned or transported by the 'insured' or in the 'insured's' care, custody, or control."[22] In this case, Wilson Trucking was in physical possession of the aggregate pursuant to its contractual agreement with Martin Marietta, but Wilson Trucking did not own the property. Therefore, the issue is whether the aggregate was within Wilson Trucking's "care, custody, or control."

▮ Louisiana courts interpreting "care, custody, or control" exclusions recognizes two distinct ways in which an insured can have sufficient "care, custody, or control" to exclude coverage. *Reynolds v. Select Properties, Ltd.*, 634 So.2d 1180, 1184 (La. 1994) (holding that a self storage facility did not have "care, custody, or control" over personal property stored in its units). In the first circumstance, the insured is "either a contractor or subcontractor who has been sued by the owner of the property upon which work was being performed, or is a party with whom property has been placed for use or repair." *Id.* These suits are usually for alleged negligence in the performance of work or the use of property. *Id.* The second circumstance where the insured has "care, custody, or control" of property "occurs where the insured has a proprietary interest in or derives monetary benefit from the property." *Id.* Under Louisiana law, property belonging "solely and unconditionally to a third-party and entrusted to the insured for safekeeping is not considered to be in the 'care, custody, or control' of the insured for purposes of that exclusion." *St Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 340 (5th Cir.1997) (holding that jockey equipment permissibly left at a racetrack was not in the "care, custody, or control" of the racetrack); *see also, Gulf–Wandes Corp. v. Vinson Guard Service, Inc.*, 459 So.2d 14 (La.App. 1st Cir.1984) (holding that the security guard of storage space lacked "care, custody, or control" over property kept on the premises).

---

21. This conclusion is supported by a Louisiana state court opinion which construed the word "accident" in an insurance policy to include "negligent acts such as the negligent inspection." *St. Martin and Mahoney, APLC v. Eagle Aviation, Inc.*, 1995 WL 766337, 1995 U.S. Dist. LEXIS 19335 *8 (E.D.L.A.1995). In the instant action, an "accident" could be negligent cleaning of the truck.

22. Auto Insurance Policy (doc. 23, Exh. D) at 4.

In the instant action, Wilson Trucking's position is analogous to that of a storage lessor. Other than the fee paid to deliver the aggregate, Wilson Trucking did not derive a monetary benefit from the property. In the self-storage cases, the courts have held that "interest in a leased storage space is not the same as an interest in property stored in the leased storage space." *Reynolds,* 634 So.2d at 1185. Similarly, Wilson Trucking had no interest in the property contained in its truck, only an interest in the fee paid to transport the property. Therefore, Wilson Trucking lacked the requisite "care, custody, or control" for the Auto Policy exclusion to apply.

## 2. Pollution Exclusion

■ The history of the total pollution exclusion under Louisiana law is lengthy and intricate, but at this point in time, the law is also clear.[23] The purpose of the total pollution exclusion is to "exclude coverage for environmental pollution," and as such, the exclusion "will not be applied to all contact with substances that may be classified as pollutants." *Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 135 (La.2000). Instead, the application of the exclusion will depend on three factors:

(1) Whether the insured is a "polluter" within the meaning of the exclusion;

(2) Whether the injury-causing substance is a "pollutant" within the meaning of the exclusion; and

(3) Whether there was a "discharge, dispersal, seepage, migration, release or escape" of a pollutant by the insured within the meaning of the policy.

*Id.* at 135. Each of these inquiries involves an intensive fact-based evaluation. *Id.*

In the instant action, Western World has failed to provide the sufficient factual basis to support a finding of summary judgment. Genuine issues of material fact remain regarding whether Wilson Trucking is a "polluter"; whether sugar is a "pollutant"; and/or whether the sugar was discharged, dispersed, seeped, migrated, released, or escaped within the scope of the policy. The insurer bears the burden of establishing the applicability of a policy exclusion, and in short, Western World has failed to meet that burden with respect to the total pollution exclusion.

## 3. Handling of Property Exclusion

■ The Auto Policy excludes coverage for property damage "resulting from the handling of property: (a) Before it is moved from the place where it is accepted by the 'insured' for movement into or onto the covered 'auto'; or (b) After it is moved from the covered 'auto' to the place where it is finally delivered by the insured."[24] The plain language of the policy excludes coverage for handling the property before it is loaded or after it is unloaded. This exclusion does not address property damage occurring during transit.

In this case, Barry Concrete has alleged that the aggregated was damaged "during the transportation of the aggregate from the Defendant's to the Petitioner's plant."[25] The mixing of the sugar and aggregate occurred well before the property was unloaded from the Wilson Trucking vehicle. Western World's argument that the real "damage" occurred when the ag-

---

**23.** *See Doerr v. Mobil Oil Corp.,* 774 So.2d 119, 129–132 (La.2000). *Doerr* provides a comprehensive explanation of the historical interpretation of the total pollution exclusion in general liability insurance policies.

**24.** Auto Insurance Policy (doc. 23, Exh. D) at 4.

**25.** Barry's Petition for Damages (doc. 23, Exh. A) at ¶ 11.

gregate was mixed and poured is without merit. But for the alleged contamination during transit, the concrete would have cured. Therefore, the "damage" to the aggregate was complete while the aggregate was being transported in the covered auto, and as a result, the handling exclusion is inapplicable.

### 4. Completed Operations Exclusion

 Western World argues that any alleged property damage occurred *after* Wilson unloaded the truck, and as a result, the work was already completed at the time of injury. The complete operations exclusion precludes coverage of property damage "arising out of your work after that work has been completed or abandoned." [26] Work is deemed completed at the earliest following time:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site;

(3) When that part of the work done at a job site has been put to its intended use by a person or organization other than another contractor or subcontractor working on the same project.[27]

This exclusion is typically applied in construction cases to preclude coverage for claims against a contractor or subcontractor, and neither party has cited cases applying this exclusion in an auto policy. However, even without case law, genuine issues of material fact remain with respect to when the property damage occurred and when Wilson Trucking had "complet-

ed" its job. Based on the allegations in the complaint and Western World's own understanding of the allegations, the alleged comingling of sugar and aggregate occurred while Wilson Trucking was still transporting the aggregate.[28] Clearly this was before Wilson Trucking had completed its contractual obligation of delivering the aggregate. Therefore, the completed operations exclusion is equally inapplicable.

Accordingly, the Motion for Summary Judgment (doc. 25) by Western World is hereby **GRANTED IN PART and DENIED IN PART.** Summary judgment is granted with respect to coverage under the Cargo Policy, but denied with respect to coverage under the Auto Policy.

---

**26.** Auto Insurance Policy (doc. 23, Exh. D) at 5.

**27.** *Id.*

**28.** *See* Barry's Petition for Damages (doc. 23, Exh. A) at ¶ 11 (alleging that "contamination occurred during the transportation of the ag-

gregate"); Western World's Motion for Summary Judgment (doc. 23) at 11 (stating that the "theories as to the contamination of the aggregate arise out of the alleged co-mingling of aggregate with sugar remaining in the Wilson trailer at the time the Martin Marietta aggregate was loaded").