# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2025

Lyle W. Cayce
Clerk

No. 22-30375

———

Clear Blue Specialty Insurance Company,

*Plaintiff—Appellee*,

*versus*

Landrieu Concrete and Cement Industries, L.L.C.,

*Defendant—Appellant*.

———

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:20-CV-2120

———

Before King, Richman, and Higginson, *Circuit Judges*.
Priscilla Richman, *Circuit Judge*:*

Landrieu Concrete and Cement Industries L.L.C. (Landrieu) appeals the district court's grant of Clear Blue Specialty Insurance Company's (Clear Blue) motion for summary judgment seeking declaratory relief on the basis that there was no coverage of Landrieu's claims under an insurance policy issued by Clear Blue to a third party, Double R&J Trucking Services, Inc. (R&J). Landrieu contends that the district court erred because its claims

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

were covered under the policy's Commercial General Liability (CGL) Form and Business Auto Coverage (BAC) Form, and no exclusions applied under either portion to remove coverage. Because at least one exclusion under each form applies, we affirm.

## I

An employee of R&J mistakenly delivered "sand mixed with sugar" to a concrete plant owned by Landrieu. Landrieu used the sand-sugar mixture to produce defective concrete that "failed to properly cure" when poured—the result being that the poured concrete had to "be removed and replaced." Landrieu filed a claim with R&J's insurer, Clear Blue, which denied the claim and filed suit in district court seeking declaratory relief. Clear Blue argued that Landrieu's recovery is barred by four exclusions set forth in R&J's "combined" insurance policy. The policy consisted of two separate forms, the CGL Form and BAC Form. The district court concluded that two exclusions contained in the CGL Form—the Aircraft, Auto, and Watercraft Exclusion (Auto Exclusion) and the Work-Product Exclusion—unambiguously applied to Landrieu's claim, barring recovery. It noted that, because these two exclusions applied, the other exclusions advanced by Clear Blue, including those contained within the BAC Form would not be addressed.

Landrieu argues the district court erred granting summary judgment in three ways. First, it argues the district court erred in finding coverage was barred under the CGL Form. Second, it argues the district court erred in failing to assess coverage of Landrieu's claim in relation to the BAC Form, which Landrieu contends represents a distinct insuring agreement separate from the CGL Form under the insurance policy. Third, Landrieu argues that because its claims were covered under the policy, Clear Blue is liable in bad

faith for refusing to settle the claim within thirty days of receiving proof of its loss.

This court reviews the district court's grant of summary judgment de novo.[1]  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

## II

We first address Landrieu's argument that the district court erred in finding coverage was barred under the CGL Form.  The district court ruled that at least two exclusions contained within the CGL Form, including the Auto Exclusion, applied to bar coverage over Landrieu's claim.  We agree that the Auto Exclusion applied to Landrieu's claim.  We therefore decline to assess whether the district court erred in finding the Work Product Exclusion applied.

The Auto Exclusion in the CGL Form excludes coverage in relevant part for:

> "[P]roperty damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading".

The CGL Form defines "property damage" as:

> a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

[1] *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912 (5th Cir. 1992) (per curiam).

[2] FED. R. CIV. P. 56(a).

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

The CGL Form defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not further defined under the policy.

The district court found three reasons why the Auto Exclusion applied to Landrieu's claim. First, "the property damage at issue occurred in the back of [the] truck when the sand was contaminated with sugar and became useless"; second, "the exclusion's language [was] clearly invoked by any number of R&J's actions, including the lack of 'maintenance' that accompanied an improper cleaning of the truck bed, the 'loading and unloading' of the sand, or the 'use' of the truck in general"[3]; and third, R&J's actions were the "'legal cause' of the sand's lost use," and the truck "was being used at the time of the accident."[4]

## A

Landrieu argues that the district court erred in determining the property damage at issue occurred when the sand became contaminated with sugar. It contends that the occurrence causing property damage, properly

---

[3] *See Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 771 (M.D. La. 2008), *on reconsideration in part*, No. 06-504-JJB-CN, 2008 WL 1885326 (M.D. La. Apr. 28, 2008)).

[4] *See Ryder v. Jones*, 40,963 (La. App. 2 Cir. 12/22/05), 916 So. 2d 506, 509); *see also Carter v. City Par. Gov't of E. Baton Rouge*, 423 So. 2d 1080, 1087 (La. 1982) ("The arising-out-of-use provision is designed to limit coverage to liability resulting from conduct of the insured which constitutes both a use of the vehicle and a legal cause of the injury. Accordingly, we believe that the limitation requires a court to answer two separate questions: (1) was the conduct of the insured of which the plaintiff complains a legal cause of the injury? (2) was it a use of the automobile?").

understood, was not, as the district court found, the moment the sand became contaminated with sugar in the back of the truck, but instead the moment in which concrete slabs using the contaminated sand manifested cracks and failed to cure. In support, Landrieu argues that "Louisiana courts have held that construction defects . . . are considered accidents and occurrences when they manifest themselves."[5]

Landrieu in effect asks this court to conclude the district court erred in failing to apply the "manifestation theory" to determine when the property damage occurred.[6] Landrieu is correct in stating that in Louisiana, "the clear weight of authority" in construction defect cases holds that the manifestation theory is the appropriate lens through which courts should view the initial occurrence of property damage that triggers coverage.[7]

---

[5] *See Rando v. Top Notch Props., L.L.C.*, 2003-1800 (La. App. 4 Cir. 6/2/04), 879 So. 2d 821, 827; *Korossy v. Sunrise Homes, Inc.*, 94-473 (La. App. 5 Cir. 3/15/95), 653 So. 2d 1215, 1226; *St. Paul Fire & Marine Ins. Co. v. Valentine*, 95-0649 (La. App. 1 Cir. 11/9/95), 665 So. 2d 43, 46; *Vintage Contracting, LLC v. Dixie Bldg. Material Co.*, 03-422 (La. App. 5 Cir. 9/16/03), 858 So. 2d 22, 25.

[6] *See Norfolk S. Corp. v. Cal. Union Ins. Co.*, 2002-0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 190-91 (summarizing "[t]he four primary theories" of occurrence triggers employed by Louisiana courts as "(1) the exposure theory, in which the policy is triggered by the mere exposure to the harmful conditions during the policy period (i.e. when the toxin is deposited in the landfill during the policy period); (2) the manifestation theory, in which the policy is triggered when the injury becomes reasonably apparent or known to the claimant; (3) the continuous trigger theory, in which all policies in effect during the entire injurious process will be triggered and required to respond (i.e. when the environment is first exposed to the toxic chemical, at the time the damage first becomes apparent, and at all times in between); and (4) the injury-in-fact theory, in which the policy is triggered when there is evidence of actual injury during the policy period regardless of when exposure took place or the injury became manifest" (footnotes omitted)).

[7] *Rando*, 879 So. 2d at 833 (finding that the "clear weight of authority in more recent cases" followed the manifestation theory in construction defect cases, but noting that "a clear signal from the Supreme Court on this issue would surely do much to eliminate expensive future litigation"); *Korossy*, 653 So. 2d at 1226 ("Under [the manifestation] theory, property damage would be considered to have occurred when it became manifest,

No. 22-30375

However, Landrieu fails to recognize that there is a noted "lack of uniformity on this issue" in Louisiana caselaw,[8] and that under certain facts, Louisiana courts have found the manifestation theory inappropriate to apply.[9]

For example, in *Orleans Parish School Board v. Scheyd, Inc.*,[10] the Louisiana Fourth Circuit Court of Appeal refused to "make the 'quantum leap' and say that the manifestation theory is applicable, as a matter of law,

---

regardless of when the act from which it resulted occurred."); *St. Paul Fire*, 665 So. 2d at 47 (holding that the policy in effect during the installation of an air conditioning system was not liable for coverage for a fire that occurred after the policy expired, even though the fire was caused by the defective installation); *Jackson v. Welco Mfg. of Tex.*, 612 So. 2d 743, 744-45 (La. Ct. App. 1992) (holding that insurance policy was not liable for wall discoloration caused by defective sheetrock because discoloration did not appear until after policy expired), *aff'd en banc*, (La. Ct. App. 1993).

[8] *See Fontenot v. One Beacon Am. Ins. Co.*, No. 03 1960, 2005 WL 1788251, at *7 (W.D. La. July 27, 2005) ("It should also be noted, however, that the *Rando* court, recognizing the lack of uniformity on this issue, qualified their holding in the subsequent sentence by stating, 'a clear signal from the Supreme Court on this issue would surely do much to eliminate expensive future litigation.' . . . The decision in *Rando* can hardly be construed as a genuine 'stamp of approval' for use of the manifestation rule as a matter of law." (quoting *Rando*, 879 So. 2d at 833)).

[9] *See Orleans Par. Sch. Bd. v. Scheyd, Inc.*, 95-2653 (La. App. 4 Cir. 4/24/96), 673 So. 2d 274, 277-78; *Grefer v. Travelers Ins. Co.*, 04-1428 (La. App. 5 Cir. 12/16/05), 919 So. 2d 758, 766 (refusing to apply the manifestation theory in a property damage claim resulting from contamination to leased property); *Herzog Contracting Corp. v. Oliver*, 40,342 (La. App. 2 Cir. 12/16/05), 918 So. 2d 516, 522 ("In order for there to be coverage under these policies, the property damage must have occurred during the policy period. The property damage was the contamination . . . to the property . . . ."); *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076-80 (La. 1992) (adopting the exposure theory in deciding an insurance coverage dispute in the context of personal injuries resulting from asbestos exposure). *But see LeBlanc v. Tex. Brine Co.*, 989 F.3d 359, 366 (5th Cir. 2021) ("From what we have been able to discern, the concept of coverage at the time of exposure has been applied in cases involving long-latency diseases (e.g., diseases from asbestos exposure) and long-term environmental damage (e.g., hazardous-waste releases)." (italics omitted)).

[10] 95-2653 (La. App. 4 Cir. 4/24/96), 673 So. 2d 274.

No. 22-30375

in all cases."[11]  It noted that the Louisiana Fifth Circuit Court of Appeal in *Korossy v. Sunrise Homes, Inc.*,[12] the seminal case applying the manifestation theory in the context of construction defect cases, "qualified its holding by stating: 'Under the *facts of these cases*, property damage did not result until the damage manifested itself.'"[13]  In *Scheyd*, finding the manifestation theory inapplicable, the Louisiana Fourth Circuit Court of Appeal reasoned that although the language of the insurance policy in that case stated "that property damage must occur during the policy period," it did "not say the damage must become noticeable during the policy period."[14]  The court additionally noted that the manifestation theory would more appropriately be applied "when there is no credible proof of when the damage actually occurs."[15]

---

[11] *Id.* at 277-78.

[12] 94-473 (La. App. 5 Cir. 3/15/95), 653 So. 2d 1215.

[13] *Scheyd*, 673 So. 2d at 278 n.4 (alteration in original) (quoting *Korossy*, 653 So. 2d at 1226 ("We find the manifestation theory should be applied in this case.  The differential settlement resulted from each home's continuous or repeated exposure to the injurious conditions over a course of time, but the effects of the excessive settlement did not become 'damage' until it was discovered by the homeowners.  It is true that what constituted "damage" depended to an extent on the perceptions of the individual homeowner, in that one may have perceived damage where another perceived only normal wear-and-tear, up to the point where any reasonable person would perceive 'damage.'  Nevertheless, we conclude the better rule is to deem the occurrence took place when the damage was discovered.  The policy definition requires an occurrence to 'result' in property damage.  Under the facts of these cases, property damage did not result until the damage manifested itself.")).

[14] *Id.* at 278.

[15] *Id.*

No. 22-30375

Taking *Scheyd* into consideration, the factually similar case *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*[16] is instructive. In *Barry Concrete*, a federal district court assessed whether there was coverage under an insurance policy and whether any exclusions to that coverage applied. In that case, nearly identical to the one before us, concrete aggregate became contaminated with sugar during transportation, and the contaminated aggregate was used to make defective concrete slabs that failed to cure, requiring the demolition and replacement of the slabs.[17]

The court in *Barry Concrete* noted that the "Auto Policy" particular to that case applied because that insurance policy "defined an 'accident' as 'includ[ing] continuous or repeated exposure to the same conditions resulting in . . . "property damage." ' "[18] The policy defined property damage as "damage to or loss of use of tangible property,"[19] and the court reasoned that "[c]learly the 'continuous and repeated exposure' of the aggregate to sugar resulted in damage to the aggregate as it would no longer harden into concrete."[20] The court further noted that "[t]he failure to properly clean out the trucks which resulted in the mixing of aggregate and sugar could reasonably be interpreted as an 'accident' resulting from 'use' of an automobile under the policy."[21] The court, in making this assessment, conceptualized the property damage as having occurred when the concrete

---

[16] 531 F. Supp. 2d 766 (M.D. La. 2008), *on reconsideration in part*, No. 06-504-JJB-CN, 2008 WL 1885326 (M.D. La. Apr. 28, 2008).

[17] *Id.* at 768.

[18] *Id.* at 770-71 (first alteration in original).

[19] *Barry Concrete*, 2008 WL 1885326, at *1.

[20] *Barry Concrete*, 531 F. Supp. 2d at 770-71.

[21] *Id.* at 771; *see also id.* at 771 n.21 ("[A]n 'accident' could be negligent cleaning of the truck.").

aggregate itself became damaged during transportation, not when the damage to the concrete slabs manifested as a consequence of the contamination.[22] We agree with this reasoning.

The situation here is very similar. The CGL Form defines "property damage" as either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." It defines an "occurrence" as being "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Following *Barry Concrete*, the district court correctly identified that "[u]ltimately, 'the contamination of the [sand] during transport made it unsuitable for use as the sugar prevented the concrete from curing' and the 'inability to employ the [sand] in its intended use constitutes "loss of use"'" under the auto exclusion."[23]

While most construction defect cases view the occurrence of property damage through the lens of the manifestation theory, Louisiana law does not necessarily require the court do so; instead, it instructs courts to look to the facts particular to the case at hand to determine the appropriate theory to apply for assessing when property damage occurs.[24] Given the facts here, the district court did not err in refusing to apply the manifestation theory to determine how or when the property damage occurred, especially in light of *Barry Concrete*.[25] The policy does not require the damage to become

---

[22] *See id.* at 770-71.

[23] *See Barry Concrete*, 2008 WL 1885326, at *2.

[24] *See Orleans Par. Sch. Bd. v. Scheyd, Inc.*, 95-2653 (La. App. 4 Cir. 4/24/96), 673 So. 2d 274, 277-78; *see also Fontenot v. One Beacon Am. Ins. Co.*, No. 03 1960, 2005 WL 1788251, at *7 (W.D. La. July 27, 2005) (citing *Rando v. Top Notch Props., L.L.C.*, 2003-1800 (La. App. 4 Cir. 6/2/04), 879 So. 2d 821, 833).

[25] While "manifestation can be a viable rule when there is no credible proof of when the damage actually occurs," *see Scheyd*, 673 So. 2d at 278, here, as in *Barry Concrete*, there

No. 22-30375

"noticeable during the policy period."[26]  Additionally, the parties were able to identify "when the damage actually occur[red]."[27]  The district court appropriately understood that the property damage occurred not when the slabs manifested cracks and failed to cure but instead when the sand became contaminated in the back of the truck.

**B**

Landrieu next argues that the district court erred in finding the truck was in "use" at the time the property damage occurred and that it erred in finding a lack of "maintenance" under the exclusion.

As to the argument that the truck was not in "use" at the time the property damage occurred, Landrieu's main contention is that the property damage occurred "weeks after any 'use' of the . . . truck" because, as previously discussed, it contests the district court's understanding of the property damage as having occurred when the sand became contaminated with sugar in the back of the truck.  Landrieu's conception of when the property damage occurred is incorrect, and "[t]he failure to properly clean out the truck[] which resulted in the mixing of aggregate and sugar could reasonably be interpreted as an 'accident' resulting from 'use' of an automobile under the policy."[28]  Landrieu's argument here falls short.

---

is credible proof, and the parties even agree, that the sand became contaminated with sugar in the back of the truck.

[26] *Scheyd*, 673 So. 2d at 278.

[27] *Id.*

[28] *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 771 (M.D. La. 2008), *on reconsideration in part*, No. 06-504-JJB-CN, 2008 WL 1885326 (M.D. La. Apr. 28, 2008).

Second, Landrieu argues that the district court erred in finding a lack of "maintenance" under the exclusion. It argues that the term does not include "[w]ashing a vehicle." Landrieu points out that a definition for "maintenance" is not included in the CGL Form, and argues that this court should look to the ordinary meaning of the word, which it says is "the act of maintaining" or "the upkeep of property or equipment."[29] It contends that taken in context, "[w]ashing a vehicle is not something that is considered maintenance in the ordinary usage of the word."

The district court did not err in finding a lack of maintenance under the exclusion. The Louisiana First Circuit Court of Appeal concluded in *Bolin v. Safeco Insurance Cos.*[30] that

> not only is the changing of oil, lubrication, the changing of filters, and mechanical maintenance not the only maintenance required on a vehicle, but periodic washing of a motor vehicle is maintenance as it is necessary for the purpose of removing accumulated mud and dirt from, on and under the vehicle, thus prolonging its useful life.[31]

The court additionally noted that "[t]he language in the insurance contract d[id] not limit the term 'maintenance' to the changing of oil, lubrication,

---

[29] *See Maintenance*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/maintenance [https://perma.cc/6EVD-JFS2] (last visited Apr. 30, 2025).

[30] 431 So. 2d 71 (La. Ct. App. 1983).

[31] *Id.* at 72; *see also Harrison v. Exide Techs., Inc.*, No. 04-699-JJB, 2006 WL 8432851, at *7 (M.D. La. Aug. 29, 2006) ("Without express language in the policy to the contrary, maintenance of an automobile must include the washing of it to keep it in good working condition.").

changing of filters, and mechanical repairs, but leaves that term open to any kind of maintenance that may be performed on a motor vehicle."[32]

The language of the contract here is much the same. As Landrieu identifies, "maintenance" is not defined or limited in any way to the category of mechanical repairs. Because property damage resulted from a failure to wash and thereby maintain the vehicle, Landrieu's claims were appropriately excluded by the district court under the Auto Exception on this basis.

## C

Landrieu finally argues there was no "property damage" under the Auto Exclusion because the sand was not physically damaged. It argues that, because the sand was not physically damaged, there was no "loss of use" under the exclusion. Clear Blue argues the district court correctly found there was loss of use, stating that

> [a]side from the fact that people do not deal with "sand" at the level of individual grains and would ordinarily think of sand as "damaged" if large quantities of it are not fit for intended use, the exclusion specifically applies to "loss of use" as a form of excluded "property damage."

It further argues that "courts have held that the very type of contamination involved in the case at bar—improper mixture with sugar that keeps the concrete from properly curing—is 'loss of use' under language substantially similar to the exclusion language in the instant case."[33]

The district court did not err in finding that the sand becoming contaminated with sugar was "property damage" under the exclusion. As the court in *Barry Concrete* noted, "[c]learly the 'continuous and repeated

---

[32] *Bolin*, 431 So. 2d at 72.

[33] *See Barry Concrete*, 2008 WL 1885326, at *2-3.

exposure' of the aggregate to sugar resulted in damage to the aggregate as it would no longer harden into concrete."[34]  Additionally, "the contamination of the aggregate during transport made it unsuitable for use as the sugar prevented the concrete from curing.  The inability to employ the aggregate in its intended use constitutes 'loss of use.'"[35]  Again, for the reasons previously discussed, the case here is the same.

Because the Auto Exclusion applies to Landrieu's claim, there was no coverage under the CGL Form.

## III

We next address Landrieu's argument that the district court erred in failing to assess whether any exclusions applied to Landrieu's claim under the BAC Form.  After assessing that the Auto Exclusion and Work Product Exclusion applied, the district court granted Clear Blue's motion for summary judgment "because at least two exclusions apply to the entirety of Landrieu's claim."  In doing so, the court stated it would "not address the two remaining provisions," which Clear Blue argued excluded coverage of Landrieu's claims.  The two provisions left unaddressed were the Property Damage Exclusion, contained within the CGL Form, and the Care, Custody or Control (CCC) Exclusion, contained within the BAC Form.

The BAC Form is a distinct part of R&J's insurance policy.  The policy is comprised of two separate forms, the BAC Form and the CGL Form.  The CGL Form includes the two exclusions that were addressed by the district court—the Auto Exclusion and the Work-Product Exclusion.

---

[34] *Barry Concrete, Inc. v. Martin Marietta Materials, Inc.*, 531 F. Supp. 2d 766, 770-71 (M.D. La. 2008), *on reconsideration in part*, No. 06-504-JJB-CN, 2008 WL 1885326 (M.D. La. Apr. 28, 2008).

[35] *Barry Concrete*, 2008 WL 1885326, at *2.

The BAC Form contains its own exclusions. Clear Blue evidently relied on only one exclusion contained within the BAC Form—the CCC Exclusion—to deny coverage under the BAC Form. The district court, however, did not address whether the CCC exclusion applied to Landrieu's claim.

Landrieu argues that "to properly determine whether coverage applies to a claim made on the [p]olicy, one must consider coverage under both the CGL Form and [BAC] Form independently of the other." Clear Blue argues that "while the district court did not specifically discuss the exclusions under that form, it still implicitly decided those issues in a final judgment by granting Clear Blue's motion for summary judgment and finding *no* coverage."

The district court's order does not imply that it decided there was no coverage under the BAC Form. In contrast, the district court stated that it would "not address the two remaining provisions," including those contained within the BAC Form. However, courts in Louisiana assess coverage under BAC Forms and CGL Forms separately and explicitly.[36] The district court should have assessed whether there was coverage under the BAC Form. However, because at least one exclusion in that Form bars coverage, the summary judgment denying Landrieu's claim is sustained.

The CCC Exclusion in the BAC Form in relevant part excludes "'[p]roperty damage' to or 'covered pollution cost or expense' involving property owned or transported by the 'insured' or in the 'insured's' care, custody or control." Landrieu argues that the "[CCC] Exclusion in the Auto Form is not triggered [by its claim] because the damaged material was

---

[36] *See, e.g.*, *Adams v. Thomason*, 32,728 (La. App. 2 Cir. 3/1/00), 753 So. 2d 416, 421-22 (assessing separately a policy "contain[ing] two separate coverage parts, a business auto coverage form and a commercial general liability form").

not owned, transported, or in the 'Care, Custody or Control' of R&J when the damage manifested itself." Clear Blue argues that this court should find the CCC Exclusion applied by following the reasoning of the district court in *Barry Concrete*.

In *Barry Concrete*, the district court applied a care, custody, or control exclusion that was nearly identical to the CCC Exclusion at issue here.[37] The exclusion there stated that "'property damage to . . . property owned *or* transported by the "insured" *or* in the "insured's" care, custody, control' is excluded from coverage," and defined the term "property damage" as "damage to or loss of use of tangible property."[38] The district court there found that "[a]s the plain language of this policy excludes property damage to items 'transported by the insured,' the Auto Policy effectively excludes coverage for damage to the aggregate in the instant action."[39]

As previously discussed, the district court correctly concluded that the property damage in the present case occurred when the sand became contaminated with sugar. As in *Barry Concrete*, the sand became contaminated with sugar during transportation by the insured party. The CCC Exclusion therefore clearly applies to Landrieu's claim and excludes coverage under the BAC Form.

## IV

Having concluded that exclusions apply and there is no coverage of Landrieu's claim under either the CGL Form or the BAC Form, Landrieu's

---

[37] *Barry Concrete*, 2008 WL 1885326, at *2-3.

[38] *Id.* at *1 (alterations in original).

[39] *Id.* at *2 (footnote omitted).

No. 22-30375

argument that Clear Blue acted in bad faith by refusing to pay Landrieu's claim is without merit.[40]

\*    \*    \*

For the foregoing reasons we AFFIRM the district court's grant of Clear Blue's motion for summary judgment.

---

[40] *See Baack v. McIntosh*, 19-0657 (La. App. 3 Cir. 7/29/20), 304 So. 3d 881, 908, ("Penalties should not be assessed when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense. Especially when there is a reasonable and legitimate question as to the extent and causation of a claim, bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts exist." (citation omitted)), *aff'd*, 20-01054 (La. 6/30/21), 333 So. 3d 1206.